*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit I.O.P. 32.1(b)
File Name: 13a0246p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT
_____

CLEVELAND INDIANS BASEBALL COMPANY, L.P.,

       *Fourth-Party Plaintiff-Appellant*,

    *v.*

NEW HAMPSHIRE INSURANCE COMPANY,
           *Defendant-Appellee*,

CSI INSURANCE GROUP,

    *Fourth-Party Defendant-Appellee*.

No. 12-1589

Appeal from the United States District Court
for the Eastern District of Michigan at Detroit.
No. 2:11-cv-11378—Sean F. Cox, District Judge.

Argued: April 30, 2013

Decided and Filed: August 23, 2013

Before: MERRITT, CLAY, and DONALD, Circuit Judges.

_____

## COUNSEL

**ARGUED:** Michelle A Thomas, THOMAS, DeGROOD & WITENOFF, P.C., Southfield, Michigan, for Appellant. Trent B. Collier, COLLINS, EINHORN, FARRELL & ULANOFF, P.C., Southfield, Michigan, for Appellee CSI **ON BRIEF:** Michelle A Thomas, THOMAS, DeGROOD & WITENOFF, P.C., Southfield, Michigan, for Appellant. Trent B. Collier, COLLINS, EINHORN, FARRELL & ULANOFF, P.C., Southfield, Michigan, for Appellee CSI. Jeffrey C. Gerish, NEW HAMPSHIRE INSURANCE COMPANY, Bloomfield Hills, Michigan, for Appellee New Hampshire Insurance.

    MERRITT, J., delivered the opinion of the court, in which DONALD, J., joined. CLAY, J. (pp. 14–19), delivered a separate dissenting opinion.

---

**OPINION**

---

MERRITT, Circuit Judge.  In this diversity case, an accident occurred at a "Kids Fun Day" event before a Cleveland Indians baseball game on June 12, 2010.  Douglas Johnson and David Brown were attending the game as spectators.  They were looking at an exhibit outside the Kids Zone when a large inflatable slide collapsed on them.  Mr. Johnson died nine days later.  This insurance dispute arises out of a lawsuit filed against the Cleveland Indians and other parties by Mr. Brown and the estate of Mr. Johnson in an Ohio state court for punitive and compensatory damages.  The question is whether the district court erred when it concluded that the insurance broker, defendant CSI Insurance Group, who mistakenly failed to obtain the insurance that would cover the accident, could not be liable in negligence.  For the reasons that follow, we affirm the judgment in favor of New Hampshire Insurance Company but reverse the judgment in favor of CSI Insurance Group and remand for further proceedings.

**I.**

Four parties were involved in a series of transactions to obtain the inflatable slide and the insurance coverage on it:  Cleveland Indians Baseball Company, L.P., National Pastime Sports, LLC, CSI Insurance Group and New Hampshire Insurance Company.  National Pastime Sports, not a party to this appeal, entered into a contract with plaintiff Cleveland Indians Baseball Company to produce "Kids Fun Day" events before several Cleveland Indians games during the summer of 2010.  As part of the entertainment, National Pastime agreed to provide the inflatable slide that collapsed.  Also in accordance with the agreement, National Pastime was required to purchase a comprehensive general liability insurance policy naming the Cleveland Indians as an additional named insured.  "Production Agreement" dated Jan. 4, 2010, at ¶ 6.  National Pastime engaged an independent insurance broker, defendant CSI Insurance Group, to procure the required policy.  *See* Annual Events Application, dated Mar. 2, 2010.  On the first page of the Application sent to the insurance broker, under the heading

"Qualification Questions," the box is checked to indicate that the events will have "bounce houses or inflatables." *Id*. The insurance broker, CSI, subsequently provided National Pastime with a proposal for a policy from defendant New Hampshire Insurance Company for a premium of $2,590, which was accepted. A "Certificate of Liability Insurance" was issued on April 27, 2010, more than six weeks before the accident occurred. It named the insured as "National Pastime Sports LLC" and the Certificate Holder as "Cleveland Indians Baseball Company LP." It is undisputed that neither National Pastime nor the Indians had received a copy of the full policy at the time of the accident that killed Mr. Johnson and underlies this insurance dispute.

Shortly after the accident, National Pastime contacted the insurance broker, CSI, to notify it of the accident. It was then that National Pastime learned that, despite its specific request on the application for insurance sent to CSI, that CSI had mistakenly failed to procure a comprehensive liability policy that expressly covered inflatables. In an email exchange between CSI and National Pastime on June 22, 2010, National Pastime points out that it checked the box on the cover page of the application that inflatables would be used at the event. In response, an employee of CSI emailed back, "Oh, ok. Sorry, I guess I missed it. I'm so used to quoting up your events I think I hardly look a anything but the dates and the details of the event." The next email to National Pastime goes on to say that CSI will submit the claim to the carrier [New Hampshire Insurance] but seems to begin to deny any fault: "however, inflatable's [sic] are excluded on the policy you purchase[d] from us. Whoever own the inflatable's [sic] are [sic] to carry insurance on them and name you as Additional Insured's [sic] on their policy.[1] I don't believe I've ever seen you indicate on your applications that inflatable's [sic] are at your events, but please note, the exclusion is listed on the quotes we sent over to you." *See* Email exchange between Lori Nelson of CSI Insurance Group and Jason Hockman of National Pastime, dated June 22, 2010.

---

[1] National Pastime was to provide the inflatables and provide insurance coverage for them under its agreement with the Indians. The record does not indicate who "owns" the inflatables.

The underlying suit by Johnson and Brown was submitted to New Hampshire Insurance, which denied any responsibility to defend or indemnify National Pastime or the Cleveland Indians based on the "amusement device" exclusion in the policy. Letter from York Services Group, the claim administrator for New Hampshire Insurance, dated Aug. 11, 2010. National Pastime filed a complaint against New Hampshire Insurance seeking a declaration that it defend and indemnify National Pastime in the underlying wrongful death suit.[2] New Hampshire Insurance subsequently filed a counterclaim against National Pastime and a third-party complaint against the Indians stating that it was not required to defend or indemnify under the terms of the policy. The Indians then filed a counterclaim against New Hampshire Insurance for a declaratory judgment seeking coverage under the policy and filed a complaint against CSI, the insurance broker that failed to procure the insurance as requested.

CSI moved for summary judgment on the Indians' claims pertaining to CSI's failure to procure the proper insurance, which the district court granted on November 17, 2011. The district court held that "any duty owed to them [Cleveland Indians] by CSI must lie in statute or contract" and ruled out any negligence claim. *Nat'l Pastime Sports, LLC v. CSI Ins. Group*, 830 F. Supp. 2d 348, 354 (E.D. Mich. 2011). The district court denied the Indians' Motion for Reconsideration. Opinion and Order, Mar. 29, 2012.

New Hampshire Insurance filed a Motion for Judgment on the Pleadings pertaining to the claims to defend and indemnify brought by National Pastime and the Indians. The district court granted New Hampshire Insurance's motion on the pleadings, finding that the insurance policy was unambiguous in its exclusion of coverage for injuries arising out of the inflatable slide. Amended Opinion and Order, dated Apr. 18, 2012. In a previous decision, this Court agreed with the district court that the policy excluded coverage for the inflatable slide.[3] For the reasons given in our opinion in *Nat'l*

---

[2]In the same complaint, National Pastime also brought a negligence claim against CSI for failing to procure the policy with the coverage requested. That claim was dismissed below on the parties' stipulation, presumably due to settlement.

[3]*See* Oral Opinion issued pursuant to Sixth Circuit Rule 36 in *Nat'l Pastime Sports, LLC v. New Hampshire Ins. Co.*, No. 12-1588 (Apr. 30, 2013). Briefly, we held that the standard, comprehensive general liability policy specifically excludes "slides:"

*Pastime Sports, LLC v. New Hampshire Ins. Co.*, No. 12-1588, we affirm the judgment of the district court as to the Cleveland Indians' appeal against New Hampshire Insurance Company.

The district court entered a final judgment on all claims on April 18, 2012. The Indians filed a timely appeal to this Court alleging error in the November 17, 2011, Order Granting Summary Judgment to CSI, the March 12, 2012, Order Denying Reconsideration of the November 17, 2011, Opinion and Order, and the April 18, 2012, Amended Opinion and Order Granting New Hampshire Insurance Company's Motion for Judgment on the Pleadings.

## II.

The Indians filed a complaint against the insurance broker, CSI Insurance Group, claiming tort injury due to CSI's negligent failure to procure the insurance requested by National Pastime Sports for the "Kids Fun Day" events, as well as the Indians' reliance on a Certificate of Insurance they received from CSI as notice that the requested coverage was in place. The Indians raise two arguments in this appeal: (1) the district court erred in granting summary judgment to CSI on the Indians' claims of negligence; and (2) the district court erred in holding that the Indians did not bring a claim of negligent misrepresentation or in not allowing them to amend their complaint and further

---

For purposes of this exclusion, "amusement device" means any device or equipment a person rides for enjoyment, including, but not limited to, any mechanical or non-mechanical ride, *slide*, water slide (including any ski or tow when used in connection with a water slide), moonwalk or moon bounce, bungee operation or equipment. "Amusement device" does not include any video arcade or computer game.

Endorsement pertaining to Sports/Leisure Activities/Entertainment Activities and Devices to Policy issued by New Hampshire Insurance Co. to National Pastime Sports (attached to Complaint filed in *Nat'l Pastime Sports, LLC v. CSI Ins. Group, et al.*, No. 2:11-cv-11378 (E.D. Mich. filed Apr. 4, 2011) (RE 1-4, Page ID 64) (emphasis added). Courts apply general contract rules when interpreting insurance contracts, so we must construe unambiguous provisions as written. The policy on its face excludes coverage for slides.

holding that, in any event, such a claim would fail on the merits even if properly raised.[4]

The Indians set forth in their complaint several claims based on various negligence theories based on CSI's failure to procure the requested insurance and the Indians' reliance on the Certificate of Insurance they received from CSI, which caused the Indians to proceed with the "Kids Fun Day" under the false belief that they were covered by the insurance they had requested and for which they had paid. The district court found that, as a matter of law, CSI did not owe a duty of care to the Indians because (1) CSI's professional relationship was with National Pastime only; (2) no privity of contract existed between the Indians and CSI and, in any event, the Indians' negligence claims were not "separate and distinct" from National Pastime's contract claims;[5] and (3) the Indians cannot recover for economic loss from CSI's negligence.

The district court acknowledges, and we agree, that there is no Michigan case law directly on the issue of an insurance broker's duty to an additional insured. Hence, we are left to examine the Michigan case law and decide what we think the Michigan Supreme Court would hold in this circumstance. *Erie R.R. Co. v. Tompkins*, 304 U.S. 64 (1938). We disagree with the district court and reverse and remand to the district court on the Indians' claims of negligence and negligent misrepresentation against CSI.

### Negligence

To establish a prima facie case of negligence under Michigan law, a plaintiff must establish (1) that a duty existed; (2) that the duty was breached; (3) causation between the breach and the injury; and (4) damages. *Loweke v. Ann Arbor Ceiling & Partition Co.,* 809 N.W.2d 553, 556 (Mich. 2011). The question of whether a duty exists is a question of law. *Id.*

---

[4]The Indians do not appeal the grant of summary judgment to CSI on the Indians' claims of innocent misrepresentation, fraudulent misrepresentation, and silent fraud.

[5]National Pastime's suit against CSI has been dismissed and the parties have presumably settled. The record does not reflect that National Pastime and CSI had any contractual relationship.

The district court relied on *Fultz v. Union–Commerce Assoc.,* 683 N.W.2d 587, 592 (Mich. 2004), to conclude that CSI owed no duty to the Indians that was "separate and distinct" from CSI's contractual duties to the party with which it "contracted," National Pastime.  Shortly before the district court's consideration of this case, the Michigan Supreme Court clarified that *Fultz'*s "'separate and distinct' mode of analysis" should be interpreted to hold that a contracting party's assumption of contractual obligations does not extinguish or limit separately existing common-law or statutory tort duties owed to noncontracting third parties in the performance of the contract.  *Loweke,* 809 N.W.2d at 555.  Quoting from the Sixth Circuit case *Davis v. Venture One Const., Inc.*, 568 F.3d 570, 575-76 (6th Cir. 2009), the Michigan Supreme Court said that "*Fultz* did not extinguish the simple idea that is embedded deep within the American law of torts  . . .; if one having assumed to act, does so negligently, then liability exists as to a third party for failure of the defendant to exercise care and skill in the performance itself." *Loweke*, 809 N.W.2d at 561 (internal quotation marks omitted).[6]

Furthermore, Michigan law does not require that "plaintiff have a link such as privity, a bond approaching privity, or a fiduciary relationship with the defendant in order for a duty of reasonable care to exist." *Molecular Tech. Corp. v. Valentine*, 925 F.2d 910, 916 (6th Cir. 1991) (citing *Williams v. Polgar,* 215 N.W.2d 149 (Mich. 1974)) (quotation marks and internal ellipse omitted).  Specifically, a contracting party owes a separate and distinct common law duty of care to all those whom the party knew or reasonably should have foreseen would be injured by the party's negligent acts or omissions. *Hill v. Sears, Roebuck and Co.*, 822 N.W.2d 190, 196-98 (Mich. 2012); *Loweke*, 809 N.W.2d at 555.

The Michigan courts have imposed "an independent duty of care" to be exercised by providers of professional services, like insurance brokers, towards third parties where

---

[6]The right to be compensated for injuries due to the negligence of another is well settled. This is a specific application of the ancient common law maxim *ubi jus, ibi remedium*—where there is a wrong, there is a remedy.  If one has a right, one must have the means by which to vindicate and maintain that right.  Chief Justice Marshall said: "The very essence of civil liberty certainly consists in the right of every individual to claim the protection of the laws, whenever he receives an injury.  One of the first duties of government is to afford that protection." *Marbury v. Madison,* 5 U.S. (1 Cranch) 137, 163 (1803).

the harm was foreseeable and where the defendant had specific knowledge that its actions might harm a specific third party. *See Polgar*, 215 N.W.2d at 156-57 (title abstractor); *Mieras v. DeBona*, 550 N.W.2d 202 (Mich. 1996) (attorney); *Nat'l Sand, Inc. v. Nagel Const., Inc.*, 451 N.W.2d 618, 620 (Mich. Ct. App. 1990) (engineers liable to contractor as foreseeable injured party for negligent preparation of construction plans); *cf. Molecular Tech. Corp.*, 925 F.2d at 915-16 ("without limiting its holding to a particular group of professionals, the [*Polgar*] court reiterated the well-developed negligence rule that a defendant owes a duty of care to all those who are foreseeable as a potential class of injured persons . . . [and] all of those third parties who defendant knows will rely on the information . . . .") (footnote omitted). Furthermore, the Restatement (Second) Torts § 299A provides the common law understanding of the duty of a professional to others:

> Unless he represents that he has a greater or lesser skill or knowledge, one who undertakes to render services in the practice of a profession or trade is required to exercise the skill and knowledge normally possessed by members of that profession or trade in good standing in similar communities.

The Michigan Supreme Court has followed the Restatement of Torts in numerous cases, and we believe it would follow this basic tenet of the common law in this case as well. *See, e.g., Ritchie-Gamester v. City of Berkley*, 597 N.W.2d 517 (Mich. 1999)(apparent consent); *McAuley v. Gen. Motors Corp.*, 578 N.W.2d 282, 285 (Mich. 1998) (damage remedies); *Orel v. Uni-Rak Sales Co.*, 563 N.W.2d 241, 243 (Mich. 1997) (negligence claims relating to real property).

Here, it is reasonably foreseeable that an additional insured such as the Indians will be harmed if an insurance agency or other intermediary fails to procure the intended coverage, just as the primary insured would be. While it is understandable that the law should not allow the insurance broker to be held liable to a virtually limitless class of claimants who are total strangers to the relationship between the insurance agency and the insured, or parties who were unknown to the insurance broker before the filing of a suit, this is not that case. The Michigan courts have repeatedly held in numerous

contexts that considerations of fairness, including the defendant's ability to prevent the harm, permit a finding that the defendant owes a duty of care to foreseeable third parties. CSI knew that it was procuring insurance for the Indians as well as for National Pastime, it knew exactly what dates and events the insurance was for, it knew that the Indians had paid the premium and that CSI had issued a Certificate of Insurance to the Indians indicating that the policy was in effect. CSI was well aware that the Indians could be harmed if the proper insurance was not procured.

CSI also argues that foreseeability alone is not enough and that there must be some additional "special relationship" that would make CSI liable to the Indians in this case. That special relationship certainly exists here. It is undisputed that CSI knew that the insurance was to cover the "Kids Fun Days" events hosted by the Indians before baseball games. CSI sent a Certificate of Insurance directly to the Indians, listing them as an additional named insured. *See* 1 Jeffrey E. Thomas & Francis J. Mootz, *New Appleman on Ins.* § 2.07[1], at 2-84 (Lib. ed. 2011)(any communication between the plaintiff and the insurance agent regarding coverage makes the harm foreseeable to the agent procuring the coverage). The Certificate of Insurance lists the dates of the "Kids Fun Days" and says the "Certificate Holder is added as Additional Insured with respect to our insured's [National Pastime Sports] negligence." Immediately below that language, the Cleveland Indians Baseball Company is named as the "Certificate Holder." Certificate of Liability Insurance, dated April 27, 2010. If indeed Michigan would require some additional "special relationship" to impose tort liability on CSI, such a relationship surely can be demonstrated here.

The district court also concluded that the lack of physical injury on the part of the Indians bars recovery in tort. According to CSI, the Indians' only damages are for an economic loss—the loss of insurance proceeds—and the "economic loss doctrine" precludes recovery in tort for this type of loss. The term "economic loss" refers to damages that are solely monetary, as opposed to damages involving physical harm to person or property. Broadly speaking, the economic loss doctrine is designed to maintain a distinction between damage remedies for breach of contract and for tort. The

economic loss doctrine provides that certain economic losses are properly remediable only in contract. The doctrine has roots in common-law limitations on recovery of damages in negligence actions in the absence of physical harm to person or property. The primary purpose of the rule is to shield a defendant from unlimited liability for all of the economic consequences of a negligent act, particularly in a commercial or professional setting, and thus to keep the risk of liability reasonably calculable. Because the Indians' tort claim is based on CSI's professional negligence in a commercial setting, CSI argues that the economic loss doctrine bars the claim.

The cases cited by CSI for the proposition that the "economic loss doctrine" bars recovery are not factually analogous and do not convince us that the Michigan Supreme Court would hold that the doctrine bars the Indians' negligence claim in this case. This case does not involve products liability, implied warranties, or economic recovery for some other sort of defective good where the damage is confined to the product itself — the type of case where the doctrine is most often invoked. Generally, a negligent defendant is liable for all injuries resulting directly from his wrongful act if the damages were the legal and natural consequences of his conduct and might reasonably have been anticipated. *See, e.g., Ensink v. Mecosta Cnty. Gen. Hosp.,* 687 N.W.2d 143, 147 (Mich. Ct. App. 2004); *GHD Oper., LLC v. Emerson Prew, Inc.*, No. 278857, 2009 WL 249399, at *5 (Mich. Ct. App. Feb. 3, 2009). Moreover, the underlying wrongful-death suit in this case most certainly does concern physical injury. The fact that the case presents itself as an insurance dispute veils the fact that the underlying injuries complained of are physical.

In addition, based on our review of case law from other jurisdictions, we conclude that the economic loss doctrine does not generally bar claims for economic losses suffered when an insurance broker negligently procures insurance. *See, e.g., Pitts v. Farm Bureau Life Ins. Co.,* 818 N.W.2d 91, 98 & n.4 (Iowa 2012); *Grynberg v. Agri Tech, Inc.,* 10 P.3d 1267, 1271 & n. 4 (Colo. 2000) (en banc); *Steiner Corp. v. Johnson & Higgins,* 196 F.R.D. 653, 656-57 (D. Utah 2000); *Kanter v. Deitelbaum*, 648 N.E.2d 1137, 1139-40 (Ill. 1995).

## Negligent Misrepresentation

The Indians contend that they were also injured when CSI delivered a Certificate of Insurance to them that implied that the requested insurance was in force. The Indians offer proof that they relied on the representation provided by CSI in proceeding with the Kids Fun Day under the belief that they had a policy that covered the activities they specified. The district court found that the Indians did not adequately plead a claim of negligent misrepresentation against CSI and, in any event, Michigan law limits such a theory to claims against abstractors and accountants.

The elements of the tort of negligent misrepresentation are: (1) the defendant made a material misrepresentation; (2) the representation was false; (3) the defendant was negligent in making the misrepresentation, *i.e.*, the defendant breached a business or professional duty of care to provide accurate information to those who employ him; and (4) the plaintiff suffered damages as a result. *Law Offices of Lawrence J. Stockler P.C. v. Rose*, 436 N.W.2d 70, 81 (Mich. Ct. App. 1989).

Section 552(2) of the Restatement (Second) of Torts[7] limits a professional's liability for negligently supplied information to "the person or one of a limited group of persons for whose benefit and guidance he intends to supply the information . . . ."

---

[7]The Restatement (Second) of Torts § 552, addressing negligent misrepresentation, states:

(1) One who, in the course of his business, profession or employment, or in any other transaction in which he has a pecuniary interest, supplies false information for the guidance of others in their business transactions, is subject to liability for pecuniary loss caused to them by their justifiable reliance upon the information, if he fails to exercise reasonable care or competence in obtaining or communicating the information.

(2) Except as stated in Subsection (3), the liability stated in Subsection (1) is limited to loss suffered

(a) by the person or one of a limited group of persons for whose benefit and guidance he intends to supply the information or knows that the recipient intends to supply it; and

(b) through reliance upon it in a transaction that he intends the information to influence or knows that the recipient so intends or in a substantially similar transaction.

(3) The liability of one who is under a public duty to give the information extends to loss suffered by any of the class of persons for whose benefit the duty is created, in any of the transactions in which it is intended to protect them.

Section 552 requires a determination of whether the professional had any reason to know that a third party might be relying on the information. This approach provides protection to injured third parties, while avoiding the potentially limitless liability created by a simple foreseeability analysis. As with the negligence claim, the focus is on whether an insurance agent could have foreseen possible injury to some *specific* third party and narrows the pool. Under this approach, concepts of foreseeability and reliance are combined to limit the professional's liability. Rather than imposing liability on any potentially foreseeable third party, the approach under Section 552 essentially requires a determination of whether the professional had any reason to know that a third party might be using the information and whether the professional knew that the third party would be relying on the information.

The element of foreseeability in this case has already been established—and, in fact, conceded by CSI—so we turn to the reliance element. The Indians claim that they did not receive any document or other information from any party indicating that the insurance policy did not cover inflatable slides. It is undisputed that neither the Indians nor National Pastime had not yet received a copy of the full policy from New Hampshire Insurance Company or CSI. In the absence of receipt of the actual policy, reliance by the Indians on the Certificate as a representation by CSI that CSI had procured the requested insurance, including coverage for inflatables, was reasonable. *See GHD Operating, LLC v. Emerson Prew, Inc.*, No. 278857, 2009 WL 249399, at \*6-\*7 (Mich. Ct. App. Feb. 3, 2009) (reliance on certificate insurance in absence of actual policy is justified).

The Indians did not bring a separate claim for negligent misrepresentation nor did it file a motion to amend until after the district court granted summary judgment to CSI on all of the Indians' claims in its complaint. However, the allegations in its complaint and the other claims in the complaint, particularly the "innocent misrepresentation" claim (which the Indians did not pursue on appeal), state that the Indians relied on the Certificate of Insurance to proceed with the "Kids Fun Days" with knowledge that they had the requested insurance coverage. CSI was on notice that the

Indians were asserting claims grounded in negligence and on notice that the Indians claim to have relied on the Certificate of Insurance as written proof of coverage. We therefore remand to the district court with instructions to let the negligent misrepresentation claim proceed along with the general negligence claim.

Accordingly, for the foregoing reasons, the judgment of the district court is affirmed as to defendant New Hampshire Insurance Company, but we reverse and remand for proceedings consistent with this opinion concerning the Indians' negligence claims against defendant CSI Insurance Group.

—————————

**DISSENT**

—————————

CLAY, Circuit Judge, dissenting.  I disagree with the majority's interpretation of the relevant Michigan tort law as to both the claims of negligence and negligent misrepresentation.  I would affirm the decision of the district court, and accordingly, I respectfully dissent.

1.     **Negligence**

Under Michigan law, there are four elements of a claim for negligence: duty, breach, causation, and damages.  *Hill v. Sears-Roebuck*, 492 Mich. 651, 660, — N.W.2d — (2012).  The district court found that CSI could not be liable to the Indians under a theory of negligence because as a matter of law, CSI did not have a duty of care to the Indians.

"A legal duty or obligation may arise by contract, statute, constitution, or common law."  *West American Ins. Co. v. Meridian Mutual Ins. Co*, 583 N.W.2d 548, 551 (Mich. Ct. App. 1998.)  In this case, there is neither a statutory nor constitutional duty, and CSI did not have a contract with the Indians; therefore, CSI is only liable to the Indians for negligence if there is a common law duty of care to an additional insured party.  *See also Belfor USA Group, Inc. v. Alexis Manor Apartments*, 2009 WL 609558, at *1 (Mich. Ct. App. Mar. 10, 2009) ("In general, professional relationships for services are established by contract.").  While Michigan case law makes it clear that one can owe a third party a duty of care, *Hill*, 492 Mich. at 681 n.20, there are no cases that establish specifically that an insurance broker owes an additional insured any common law duty of care.

The majority relies on the Michigan Supreme Court's decision in *Loweke v. Ann Arbor Ceiling & Partition Co.*, 809 N.W.2d 553 (Mich. 2011) to find that the Indians have made out a *prima facie* case for negligence.  This is an incorrect interpretation of that case.  Under the rule in *Fultz v. Union-Commerce Assocs.*, 683 N.W.2d 587 (Mich.

2004), as clarified in *Loweke*, a defendant can only be liable to a plaintiff if, "aside from the contract, the defendant owed any independent legal duty to the plaintiff." *Loweke*, 809 N.W.2d at 562. In this case, the entirety of CSI's duty to the Indians was derived from its contract with National Pastime Sports ("NPS"), and therefore it cannot be separately liable to the Indians on a theory of negligence.

In *Loweke*, the Michigan Supreme Court clarified its decision in *Fultz v. Union-Commerce Associates*, 683 N.W.2d 587 (Mich. 2004). *Loweke*, 809 N.W.2d at 557. "Since Fultz . . . issued . . . courts have erroneously interpreted this Court's decisions as rejecting accepted tort-law principles and creating a legal rule . . . which bars negligence causes of action on the basis of a lack of duty if . . . plaintiff alleges a hazard that was the subject of the defendant's contractual obligations with another." *Id.* Therefore, it is possible for a defendant to owe a duty of care to a plaintiff who was not party to the contract even if the duty arose because of the subject of the contract. In *Loweke*, one subcontractor was responsible for carpentry and drywall at a construction project. The subcontractor leaned cement boards against a wall, and they fell, injuring another subcontractor. *Id.* at 555–56. Though the defendant's duty to provide the drywall services was the subject of the contract, the Michigan court found that the second subcontractor could proceed on a theory of negligence, because in addition to its contractual obligation to provide the service, the defendant had a common-law obligation to perform that service with at a reasonable standard of care so that foreseeable third parties would not be harmed. *Id.* at 562. The mere fact that there was a contract does not excuse CSI from its duty to perform that contract with its ordinary duty of care. As the court stated in *Loweke*, "courts should not permit the contents of the contract obscure the threshold question of whether any independent legal duty to the noncontracting third party exists, the breach of which could result in tort liability." *Id.* at 561.

However, while *Loweke* holds that a defendant may be liable to a third party for actions arising out of the subject of the contract, there still must be an independent duty to the plaintiff that is separate and distinct from the contract itself. The majority finds

that CSI owed an independent duty of care to perform its contractual duties such that the Cleveland Indians would not be harmed, and thus is liable directly to the Indians. Because this finding is incorrect as a matter of law, I would affirm the judgment of the district court.

Unlike the situation in *Loweke*, where "plaintiff's cause of action . . . was not brought solely on the basis of defendant's failure to perform its contractual obligations . . . " *id.* at 561, in this case the purported negligence is identical to a claim of breach of contract. As the Michigan Supreme Court has held:

> [A]n action would lie in contract if it was based solely on a defendant's failure or refusal to perform a contractual promise. In contrast, an action could lie in either contract or in tort if a "defendant negligently performs a contractual duty or breaches a duty arising by implication from the relation of the parties created by the contract . . . ." *Fultz*, 470 Mich. at 469, 683 N.W.2d 587. In the latter category of cases, however, no tort liability would arise "for failing to fulfill a promise in the absence of a duty to act that is separate and distinct from the promise made." *Id.* at 470.

*Id.* at 558.

In this case, there was no duty independent of CSI's contractual promise. The entirety of CSI's duty was contained in the contract itself, and we know that because there is no breach that the Indians allege that would not also be a breach of contract between CSI and NPS. The majority attempts to plug this hole in the Indians' allegations by stating that it was foreseeable that the Indians would be harmed by CSI's alleged breach. But the fact that it was foreseeable that the Indians would be hurt by a breach of the contract is irrelevant because that is precisely what forecloses liability sounding in tort in this case; we only know that the Indians were a foreseeable plaintiff because the contract tells us so. And "although a tort can grow out of a contract, in general, a tort is a 'wrong independent of the contract.'" *Id.* at 561 (quoting *Churchill v. Howe*, 186 Mich. 107, 114 (1915)). While we need not decide whether the harm alleged in tort must be a physical harm, though that it strongly hinted at in the *Loweke*

decision, *see id.* at 562, it is enough that we know that there is no tort claim that could be brought as a result of CSI's conduct based on these facts.

The majority further attempts to construct a separate duty out of CSI's status as a provider of professional services. This misses the point. A professional's status as a professional ordinarily concerns the standard of care, rather than whether or not the professional owed a duty to the particular plaintiff. In the cases cited by the majority, the tortfeasors were professionals who performed services that then either induced unrelated third parties to detrimental action, *see, e.g.*, *Williams v. Polgar*, 215 N.W.2d 149, 152–53 (Mich. 1974), or were based on a particular status relationship, such as being the beneficiary of a will. *See, e.g.*, *Miera v. DeBona*, 550 N.W.2d 278, 204–05 (Mich. 1996). For this argument to work, there must be a principle of law which makes an additional insured analogous to the beneficiary of a will. The majority concedes that no such principle exists in Michigan law, and at least one other state has examined this question and found that there is no such duty. *See, e.g.*, *Federal Ins. Co. v. Spectrum Ins. Brokerage Servs.*, 304 A.D.2d 316, 317 (N.Y. App. Div. 2003) ("In addition, the broker's duty is to its customer (here, the contractor) and not to additional insureds.").

Finally, the majority incomprehensibly cites the Latin maxim "*ubi jus, ibi remedium*," as if the existence of a remedy were an actual issue in this case. The more relevant Latin for this matter is "*restitutio ad integrum*." That phrase refers to the idea that the damages awarded should restore the plaintiff to its original state. The issue at the heart of this case is not the ultimate question of liability; on the facts as established at this stage, there is little question that CSI is liable to NPS, who in turn may be liable to the Indians. The rule proposed by the majority would permit double recovery, because under the majority's approach CSI could be liable to NPS for breach of its contract to obtain insurance, and to the Indians for negligence, even though the damages due to each would be the same.

## 2.     Negligent Misrepresentation

I further disagree with the majority on the question of negligent misrepresentation.[8] First, construing the claim as one of "innocent misrepresentation," the Indians cannot succeed on this claim because they did not have privity of contract with CSI. *Forge v. Smith*, 580 N.W.2d 876, 883 (Mich. 1998); *U.S. Fidelity and Guaranty Co. v. Black*, 313 N.W.2d 77, 84 (Mich. 1981) (comparing Michigan's rule with the common law and finding that privity of contract must exist for a claim of innocent misrepresentation under Michigan law). Simply, this claim does not apply where there was no contract between the two parties.

Treating the claim as one of negligent misrepresentation, the Indians still cannot show that they are entitled to recovery from CSI. It is true that Michigan courts have abolished the requirement of contractual privity for some claims of negligent representation. *See Williams v. Polgar*, 215 N.W.2d 149, 152–53 (Mich. 1974). In *Williams*, the Michigan Supreme Court found that a real estate abstracter could be liable to a third party when the abstracter's work was performed negligently. But other cases that have found such third-party liability have usually required some form of detrimental reliance based on those misrepresentations, such as the purchase of property based on an abstracter's statements. *See id.* While the Indians are correct that the logic of the *Williams* court might not totally bar the use of this theory in situations that do not involve real estate abstracters, because they are a foreseeable third party, *id.,* they cannot show why the theory should apply here. In *Williams*, there were two key distinguishing features: an abstract can be (and is intended to be) used by anyone, and there were actions taken specifically in reliance on the information in the abstract. In other words, the misrepresentation induced behavior by the plaintiff.

In this case, there was no sale or any event based on that misrepresentation; the Indians just believed that NPS had obtained the proper insurance through CSI.

---

[8]In the initial complaint, the Indians labeled this cause of action as "innocent misrepresentation," but during the litigation of this motion, briefed the issue before the district court as one of negligent misrepresentation. (Order, Nov. 17, 2011, at 9 n.2.)

Furthermore, in the context of insurance contracts, the Michigan courts have held that a certificate of insurance only represents that insurance has been purchased, but makes no claims as to the extent of the coverage or the particulars of the policy. *See West American Ins. Co. v. Meridian Mutual Ins. Co.*, 583 N.W.2d 548, 551 (Mich. Ct. App. 1998). A certificate of insurance does not create any duty to warn of inaccuracies, *id.*, and therefore the Indians cannot show reasonable reliance on the document.

As with the claim for negligence, the issue here is not whether CSI is liable; it may very well be liable to NPS for its failure to perform under the contract. The issue is to whom it is liable, and because it had no contract with the Indians, it cannot be liable to them on either a theory of negligence or of negligent misrepresentation.

Accordingly, for the reasons set forth above, I respectfully dissent.