RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)
File Name: 15a0151p.06

# UNITED STATES COURT OF APPEALS

FOR THE SIXTH CIRCUIT

_____

KIMBERLY JOHNSON, Executrix of the Estate of Douglas Johnson, Deceased,

> *Plaintiff-Appellant,*

> *v.*

DOODSON INSURANCE BROKERAGE, LLC,

> *Defendant,*

DOODSON INSURANCE BROKERAGE OF TEXAS, LLC, dba CSI Special Event Insurance, dba CSI Insurance Group,

> *Defendant-Appellee.*

No. 14-1379

Appeal from the United States District Court
for the Eastern District of Michigan at Detroit.
No. 2:13-cv-10198—Sean F. Cox, District Judge.

Argued: April 29, 2015

Decided and Filed: July 15, 2015

Before: GILMAN, ROGERS, and SUTTON, Circuit Judges.

_____

**COUNSEL**

**ARGUED:** Alan H. Perer, SWENSEN & PERER, Pittsburgh, Pennsylvania, for Appellant. Trent B. Collier, COLLINS EINHORN FARRELL P.C., Southfield, Michigan, for Appellee. **ON BRIEF:** Alan H. Perer, SWENSEN & PERER, Pittsburgh, Pennsylvania, for Appellant. Trent B. Collier, COLLINS EINHORN FARRELL P.C., Southfield, Michigan, for Appellee.

1

---

**OPINION**

---

ROGERS, Circuit Judge.  This case is about whether an injured third party to a liability insurance policy has a claim against an insurance broker for failure to procure the proper liability insurance.  Because of a mistake by defendant insurance broker, decedent Douglas Johnson's fatal accident was not covered by a liability insurance policy obtained by an amusement company.  This case does not involve liability on the part of the amusement company to Johnson's estate, or liability of the insurance broker to its customer, the amusement company.  Those claims and other related claims have been resolved in separate litigation.  Instead Johnson's estate seeks recovery from the insurance broker for failing to obtain insurance for the amusement company that would have protected it from liability to injured parties.  Under Michigan law, such a suit does not generally lie in negligence because the broker's contractual duty to its client to protect the client from negligence suits, without more, does not create a tort duty to an injured party who brings such suits.  Also under Michigan law, Johnson's estate cannot succeed on a contract claim because Johnson was neither a party to nor an intended third-party beneficiary of the contract between the broker and the amusement company.  Although the parties on appeal argue extensively whether Texas or Michigan law applies, Johnson's estate concedes that if it loses under Michigan law, it would lose under Texas law.  The district court's dismissal for failure to state a claim in this case was therefore proper.

The Cleveland Indians hired National Pastime Sports to produce Kids Fun Day events at Indians baseball games.  The Kids Fun Day events had children's attractions, including an inflatable bouncy castle and inflatable slide.  The contract between the Indians and National Pastime required National Pastime to secure a five-million-dollar comprehensive liability policy.  To obtain the policy, National Pastime submitted an Application for Insurance to defendant Doodson Insurance Brokerage, stating on the application that the Kids Fun Day events would include inflatable attractions.  Doodson then arranged for National Pastime to obtain a policy from New Hampshire Insurance Company.  But this policy had what would prove to be a fatal gap: it excluded from coverage injuries caused by inflatable slides.

Johnson attended an Indians game in June 2010. While admiring a wall of fame display, he was crushed by an inflatable slide that collapsed onto him. Several days later, he died of his injuries. When National Pastime informed Doodson of the accident, Doodson replied that accidents caused by inflatables were not covered under the policy.

Several lawsuits followed.[1] Johnson's estate won a $3.5 million default judgment against National Pastime in Ohio state court. In a suit in the Eastern District of Michigan among National Pastime, the Indians, New Hampshire Insurance Company, and Doodson, the district court determined that the insurance policy did not cover Douglas Johnson's injuries, and that decision was affirmed by the Sixth Circuit. *See Cleveland Indians Baseball Co., L.P. v. N.H. Ins. Co.*, 727 F.3d 633, 637 (6th Cir. 2013). National Pastime sued Doodson for negligence in the Eastern District of Michigan, and that suit resulted in a confidential settlement. The Indians sued Doodson for negligence in the Eastern District, and the district court dismissed the suit for failure to state a claim under Michigan law. *Nat'l Pastime Sports, LLC v. CSI Ins. Grp.*, 830 F. Supp. 2d 348 (E.D. Mich. 2011). That decision was reversed on appeal, *Cleveland Indians*, 727 F.3d at 637, and the case settled.

Johnson's estate, which has not collected on the default judgment against National Pastime, sued Doodson in the Eastern District of Michigan, alleging negligence and breach of contract. Doodson moved to dismiss for failure to state a claim and the district court dismissed both claims.

The court first analyzed the negligence claim, concluding that the estate's claim failed under Texas law. Noting that neither party sought application of the law of other states, the court considered only the laws of Texas and Michigan. The court then determined that Texas and Michigan law conflict on the duties of insurance brokers inasmuch as Texas law requires privity of contract while Michigan law does not. Applying Michigan choice-of-law rules, the district court found that Texas law applied because, among other things, the insurance was procured in

---

[1]The estate sued in Ohio state court the Indians, National Pastime Sports, and other organizations involved in Kids Fun Day. National Pastime filed suit in the Eastern District of Michigan seeking a declaration of New Hampshire Insurance Company's duty to defend and indemnify National Pastime in the estate's Ohio state court suit, and alleging negligence against Doodson. New Hampshire Insurance Company filed a counterclaim against National Pastime and a third-party complaint against the Indians. The Indians filed a counterclaim against New Hampshire Insurance Company and a fourth-party complaint against Doodson.

Texas. Under Texas law, because the estate had not alleged privity of contract between Johnson and Doodson, the estate had failed to state a claim.

The court then turned to the breach-of-contract claim, concluding that the estate's claim failed under Michigan law. Again considering only Texas and Michigan law, the court determined that there was "no meaningful distinction" between the two states' laws, making it a "false conflict" situation, and thus applied the law of Michigan, the forum state. According to the court, "both states require that the promisor's promise was made directly for the third party's benefit." The court reasoned that, because the plaintiff had not alleged facts indicating that Doodson and National Pastime Sports contracted with the intent to benefit Johnson or a class to which Johnson belonged, Johnson was therefore not an intended third-party beneficiary. The court distinguished *Auto-Owners Insurance Co. v. Michigan Mutual Insurance Co.*, 565 N.W.2d 907 (Mich. Ct. App. 1997), in which the Michigan Court of Appeals had ruled that certain limousine passengers were intended third-party beneficiaries of an auto insurance policy, as limited to the automobile insurance context. Instead, the court applied the Michigan Supreme Court's decision in *Schmalfeldt v. North Pointe Insurance Co.*, 670 N.W.2d 651 (Mich. 2003), in which a bar patron injured in a bar fight was held not to be an intended third-party beneficiary of a no-fault medical benefits provision in the bar's insurance policy.

The estate appeals, arguing that Michigan law should apply to both claims and that it has stated claims under Michigan law. On appeal, Doodson argues that Texas law applies to both claims, and that the estate failed to state any claims under Texas or Michigan law. We need not, however, address Texas law because, in any event, the estate failed to state either claim under Michigan law.

The estate failed to state a claim for negligence under Michigan law because Doodson owed no tort duty to Johnson. Under Michigan law, when a contracting party is sued by a non-contracting third-party for negligence, the inquiry is whether, "aside from the contract, the defendant owed any independent legal duty to the plaintiff." *Loweke v. Ann Arbor Ceiling & Partition Co.*, 809 N.W.2d 553, 562 (Mich. 2011). The Michigan Supreme Court explained in *Loweke* that negligence in carrying out a contractual obligation may result in liability to a third party, particularly where a defendant's alleged negligence has increased the risk to third parties.

Thus the subcontractor in *Loweke* who negligently stacked boards as part of his contractual duties could be liable to a foreseeable injured bystander who was not a party to the contract. This contrasted with the court's earlier determination in *Fultz v. Union-Commerce Assocs.*, 683 N.W.2d 587 (Mich. 2004), "that the plaintiff, who had slipped on a snow- and ice-covered parking lot, did not have a negligence cause of action against the contractor hired by the premises owner to plow and salt the lot because, in essence, the plaintiff merely claimed that the contractor had breached its contract by failing to perform its contractual duties." *Loweke*, 809 N.W.2d at 558–59. This case is much closer to *Fultz* than to *Loweke*. Failing to perform a contractual obligation to procure insurance against suits by injured parties does not implicate a risk of harm that the broker had any common law duty to prevent. The thoughtful analysis of the dissent with respect to plaintiff's suit against the Cleveland Indians in *Cleveland Indians*, 727 F.3d at 642–44 (Clay, J., dissenting), supports this analysis in greater detail.

The published majority opinion in *Cleveland Indians* is of course binding on us, no matter how persuasive the dissent, at least in the absence of intervening Michigan cases that would bring the majority opinion into question. *See Rutherford v. Columbia Gas*, 575 F.3d 616, 619 (6th Cir. 2009). But *Cleveland Indians* is distinguishable because it relied on the fact that the Cleveland Indians were named contractual beneficiaries of the deficient insurance contract:

> [The broker] argues that foreseeability alone is not enough and that there must be some additional "special relationship" that would make [the broker] liable to the Indians in this case. That special relationship certainly exists here. It is undisputed that [the broker] knew that the insurance was to cover the "Kids Fun Days" events hosted by the Indians before baseball games. [The broker] sent a Certificate of Insurance directly to the Indians, listing them as an additional named insured . . . . The Certificate of Insurance lists the dates of the "Kids Fun Days" and says the "Certificate Holder is added as Additional Insured with respect to our insured's [National Pastime Sports] negligence." Immediately below that language, the Cleveland Indians Baseball Company is named as the "Certificate Holder." If indeed Michigan would require some additional "special relationship" to impose tort liability on [the broker], such a relationship surely can be demonstrated here.

727 F.3d at 639–40. In light of *Fultz* and *Loweke*, we read our holding in *Cleveland Indians* as limited to circumstances like those described in this paragraph. In the absence of such facts, we are left with the *Loweke/Fultz* distinction as applied by the Michigan Supreme Court. As

explained above, this case falls clearly on the *Fultz* side of the line.  There was no independent tort duty to comply with the contractual obligation to obtain the liability insurance at issue.

Other states have similarly declined to hold insurance agents and brokers liable in negligence to third parties injured by an insured, and it is unlikely that Michigan would rule otherwise.  *See, e.g.*, *Jones v. Hyatt Ins. Agency*, 741 A.2d 1099, 1106–09 (Md. 1999); *Napier v. Bertram*, 954 P.2d 1389, 1395 (Ariz. 1998); *Ivory v. Gulf Agency*, 667 So. 2d 725, 727 (Ala. 1995); *Pressman v. Warwick Ins. Co.*, 623 N.Y.S.2d 306, 308 (N.Y. App. Div. 1995); *Flattery v. Gregory*, 489 N.E.2d 1257 (Mass. 1986); *Freeman v. Schmidt Real Estate & Ins., Inc.*, 755 F.2d 135, 139–41 (8th Cir. 1985) (applying Iowa law).

It is true that a split Michigan Court of Appeals decision that preceded both *Fultz* and *Loweke* appeared to recognize a claim similar to the estate's.  *See Auto-Owners Ins. Co. v. Michigan Mutual Ins. Co.*, 565 N.W.2d 907, 911 (Mich. Ct. App. 1997).  In that case, the court recognized that injured passengers of a commercial limousine service would have a negligence claim against an insurance agent whose mistake resulted in a lack of coverage.  Even if *Auto-Owners* were on all fours with the estate's case, it is questionable whether *Auto-Owners* would control in light of the later Michigan Supreme Court rulings in *Fultz* and *Loweke*.  The *Auto-Owners* opinion explicitly based the tort duty on the contractual obligation: "If at trial, plaintiff could establish that a contract to procure insurance was made between [the party seeking insurance and his agent], it would be established that [the agent] owed a duty to claimants."  *Id.* at 911.  This is flatly not the inquiry required by the *Fultz/Loweke* distinction.

Moreover, even if *Auto-Owners* is good law on the particular facts before that court, the case is distinguishable because the insurance agent in that case was acting as part of the mandated-by-statute Michigan Automobile Insurance Placement Facility, which has the goal of "guarantee[ing] automobile insurance coverage to those who may be unable to procure insurance through ordinary methods," *id.* at 909 n.1, and the agent's mistake was accepting a $500 premium deposit as sufficient to trigger immediate coverage, when a $1,000 premium deposit was required by rule, *id.* at 909.  *Auto-Owners* involved mandatory automobile insurance.  States typically require such insurance for the benefit of third parties, i.e., to ensure that tort victims have a source of recovery.  By contrast, voluntary liability insurance is

ordinarily intended to benefit only the insured because the purpose of a liability policy "is to shield the insured from being required to make any payment on the claim for which he is liable." *Allstate Ins. Co. v. Hayes*, 499 N.W.2d 743, 746 n.6 (Mich. 1993) (quoting 11 COUCH ON INSURANCE 2d (rev. ed.), § 44.4). Moreover, it is foreseeable that third parties might rely on and expect insurance coverage when the insurance is mandated by statute. The same is not true for voluntary liability insurance. In short, dismissal of the negligence claim was required by Michigan law in this case, and plaintiff's negligence argument is entirely based on Michigan law.

The estate has also not stated a claim for breach of contract on the ground that Johnson was an intended third-party beneficiary. It is sufficient again for us to look only at Michigan law: the district court applied Michigan law to this claim, the estate relies upon Michigan law with respect to the claim, and the estate makes no argument that Texas law would permit recovery on the contract claim if Michigan law would not. It follows that if the district court correctly determined that Michigan law would require dismissal of the contract claim, dismissal was proper. The district court was correct in holding that Johnson was not a third-party beneficiary of the contract, for the reasons given by the district court in Part II.B. of its opinion, which we adopt. *See Johnson v. Doodson Ins. Brokerage of Texas, LLC*, 1 F. Supp. 3d 776, 787–89 (E.D. Mich. 2014).

In short, because neither Johnson nor a class of which he was a member was directly referred to in the contract, his estate has not sufficiently alleged that he was an intended third-party beneficiary of the contract. Michigan law looks to the "contract itself," focusing on its "form and meaning," for evidence that a person or a class is an intended third-party beneficiary because the person or class must be "directly referred to in the contract." *Schmalfeldt*, 670 N.W.2d at 654. Because the estate does not allege that Johnson, as an individual, was an intended beneficiary of the contract, the only question is whether Johnson was a member of a beneficiary class. If there is a third-party beneficiary class to the contract, it is the public at large, which the Michigan Supreme Court has held is "too broad to qualify for third-party status." *Schmalfeldt*, 670 N.W.2d at 655 (citing *Brunsell v. City of Zeeland*, 651 N.W.2d 388, 391 (Mich. 2002)). In *Schmalfeldt*, the Michigan Supreme Court considered whether a bar patron injured in a bar fight was an intended third-party beneficiary of an insurance contract

providing medical expenses for a bodily injury caused by an accident in the bar. *Id.* at 653–54. The court held that nothing in the contract specifically designated the patron or a class including him; rather, the contract covered members of the public at large, a class too broad to qualify for third-party beneficiary status under the statute. *Id.* at 655. Although we do not have a written contract between National Pastime and Doodson, the insurance policy described by the application and production agreement for liability insurance is even less directed at benefiting the injured party than the policy in *Schmalfeldt*. The production agreement between the Indians and National Pastime calls for "comprehensive general liability insurance" for "bodily injury and property damage covering any claims . . . arising out of obligations or performance" by National Pastime. And the application for insurance sent by National Pastime to Doodson requests "general liability" insurance.

With respect to this issue as well, Johnson's estate relies on *Auto-Owners*, which recognized passengers of a limousine service injured in an accident as intended third-party beneficiaries of the limousine's insurance contract. But a no-fault insurance policy in Michigan must cover passengers like those in *Auto-Owners*. *See* MCL § 500.3114(2). The same is not true of the policy here.

The judgment of the district court is affirmed.