**Ora J. and Susan J. Booska v. Hubbard Insurance Agency, Inc., Deborah Wheeling and Northern Security Insurance Co.**

[627 A.2d 333]

No. 92-067

Present: **Allen, C.J., Gibson, Dooley, Morse and Johnson, JJ.**

Opinion Filed March 12, 1993

Motion for Reargument Denied June 1, 1993

*Kevin E. Brown* and *Anthony G. Patt* of *Langrock Sperry & Wool*, Middlebury, for Plaintiffs-Appellants.

*Michael J. Harris* of *Paul, Frank & Collins, Inc.*, Burlington, for Defendants-Appellees Hubbard Insurance Agency and Wheeling.

*Marc B. Heath* and *Christopher D. Roy* of *Downs Rachlin & Martin*, Burlington, for Defendant-Appellee Northern Security Insurance Co.

**Johnson, J.** Plaintiffs sued their insurance agency, one of its individual agents, and plaintiffs' fire insurance carrier, following a fire that severely damaged a house they had purchased and were in the process of renovating. The trial court granted summary judgment in favor of all defendants, and plaintiffs appeal. We affirm.

Plaintiffs bought a house in Bristol for $47,500 in 1989. It is undisputed that plaintiff Ora Booska met with Deborah Wheeling, an agent of defendant Hubbard Insurance Agency, Inc., at or near the date of the closing. At that time, according to Booska's sworn statement, he told Wheeling that he

> would be changing [the house] into a one-apartment house because I don't need a house divided like that.
>
> . . . .
>
> . . . I told her there were a few things that I wanted to do, you know, to make it into a one-apartment house, like open up the doors and stuff like that. And there was a little bit of cosmetic work, I call it, that needed to be done. But I didn't want to fool with the plaster because I don't know anything about patching plaster.

Wheeling recommended that Booska insure the home for 80 percent of its replacement value, to avoid a coinsurance penalty in the event of a partial loss, and Booska agreed. A policy was issued by Northern Security Insurance Co., Inc. with coverage limits of $95,000 for the residence and $47,500 for its contents.

Thereafter, Ora Booska began substantial work on the house, including removal of the plaster, lath, carpeting, and window trim from an upstairs bedroom; removal of the wood paneling, plaster, lath, linoleum, cabinetry, and a sink from a kitchen-dining room; removal of a central floor furnace heating system, hot water heater, and a segment of sewer pipe from the basement, and the replacement of rotten floor joists and support beams; removal of the bathroom adjoining the main kitchen, including walls and fixtures; removal of the sheetrock, plaster, lath, linoleum, cabinetry and a sink from the main kitchen; and removal of some sheetrock and replacement of flooring with plywood in a small living room. As a result of these extensive renovations, plaintiffs remained in their original residence and did not move into the new house, though they had begun to move some of their personal property into it.

The house burned in May 1990. Northern advised plaintiffs that they were entitled to receive the replacement cost of the house upon replacement of the structure. Plaintiffs hired a building contractor, who estimated that replacement of the house would cost $103,300, but at no point did plaintiffs seek to

replace the house. Northern tendered a check for $46,812, representing the company's assessment of the actual cash value of the building immediately before the fire. A second check for $2,121 was offered shortly thereafter, based on new information provided by Ora Booska during the taking of a statement under oath. Northern also tendered checks for $21,958, representing the actual cash value of plaintiffs' personal property, and $1,600 for additional living expenses as a result of the fire. Plaintiffs accepted all checks tendered, without prejudice to subsequent claims.

Plaintiffs commenced the present action, seeking $95,000, the full face amount of the policy. They also sought consequential damages from defendant Northern as insurer and from defendants Hubbard and Wheeling as agents for breach of their duty to advise plaintiffs appropriately in securing insurance and in explaining relevant details of their policy, in light of plaintiffs' proposed renovation plans. The trial court granted defendants' motions for summary judgment, and plaintiffs appealed.

## I.

Plaintiffs' main argument as to defendants Hubbard and Wheeling is based on Wheeling's asserted failure to act in accordance with her "special relationship" with the plaintiffs. Plaintiffs assert that the agent had served Ora Booska's insurance needs for twelve years and that "[a]s a result of this special relationship, Ora Booska relied on Wheeling's advice and expertise when he entered her office to obtain insurance for his home." With that "special relationship" in mind, plaintiffs contend that Wheeling was negligent in failing to explain the effect that a loss before completion of remodeling would have, under the policy issued, on their coverage. Particularly critical, according to plaintiffs, was Wheeling's failure to explain that they would not receive the full policy face amount of $95,000 if fire occurred while the house was being remodeled and while the actual cash value of the house fell below $95,000 as a result of the first stages of renovation.

Defendants Hubbard and Wheeling correctly state that the record before the trial court, when it considered the summary judgment motion, did not clearly show that Mr. Booska

had informed Ms. Wheeling that extensive remodeling would occur. Based on Mr. Booska's own sworn statement, the changes would be modest and "cosmetic." It is not the function of the trial court, however, to find facts on a motion for summary judgment, even if the record appears to lean strongly in one direction. "Summary judgment is not a substitute for a determination on the merits, so long as evidence has been presented which creates an issue of material fact, no matter what view the court may take of the relative weight of that evidence." *Vermont Envtl. Bd. v. Chickering*, 155 Vt. 308, 319, 583 A.2d 607, 613–14 (1990). At the time the court ruled on the summary judgment motions, a genuine issue of fact remained as to how detailed Mr. Booska was in his description of the proposed renovations.

The grant of summary judgment in favor of Hubbard and Wheeling was not error because neither the agency nor its employee had a duty to inquire about special circumstances within the insurance purchaser's control that might affect the quality or degree of protection available under a policy. Plaintiffs' argument makes clear that they expected defendant Wheeling to have foreseen the extent of the renovations, to have determined that the manner in which the renovations were conducted would at least temporarily reduce the amount recoverable under the policy, and to have foreseen that the result (actual-value coverage of the house during renovation) was one which, though not contrary to law or public policy, was such an unreasonable risk that it necessitated a special warning.[1]

Such far-reaching expectations would have imposed on Wheeling, not the duty of a reasonable insurance agent, but that of a soothsayer. The trial court correctly ruled that the duty of Hubbard and Wheeling was rather "to use reasonable

[1] Plaintiffs argue alternatively that agent Wheeling improperly overcharged them for the coverage they obtained, since the replacement value assumptions Wheeling made in setting a premium were erroneous. The theory underlying this argument is essentially the same as their basis for claiming that Wheeling negligently failed to explain the policy terms and that she negligently created the impression that they were entitled to full replacement value even if they suffered a loss while the house was in the midst of renovation and gutted. The argument is without merit.

care and diligence to procure insurance that will meet the needs and wishes of the prospective insured, as stated by the insured." *Rocque v. Co-Operative Fire Ins. Ass'n,* 140 Vt. 321, 326, 438 A.2d 383, 386 (1981). Once a policy is procured as requested and is consistent with the applicable standard of care, no further duty is owed to the insured by the agent with respect to this insurance. *Id.* at 326–27, 438 A.2d at 386.

 Put another way, if we take all of plaintiffs' factual assertions about the length of time they were served by Hubbard and Wheeling as true, these circumstances do not support the legal theory of a "higher duty," in effect a fiduciary duty, between the agent and the purchaser. The agent's task is to be generally fair and truthful in explaining the nature of a policy, not to warn the insured about the impact of necessarily complex contract language on every eventuality. As long as the agent does the job without negligence, as between the agent and the purchaser, the task of reading and understanding the policy text is that of the purchasers. As we said in *Hill v. Grandey*:

> An agent may point out to [an insured] the advantages of additional coverage and may ferret out additional facts from the insured applicable to such coverage, but he is under no obligation to do so; nor is the insured under an obligation to respond.

132 Vt. 460, 468–69, 321 A.2d 28, 34 (1974). In the present case, plaintiffs could have understood from the text of the policy the likely result of a fire occurring in the midst of renovation, when the value of the house was likely to have been reduced, albeit temporarily, by what was essentially partial demolition.

In sum, plaintiffs have not demonstrated a genuine issue of material fact as to any special relationship between agent Wheeling and themselves, and the court properly granted summary judgment in favor of Wheeling and Hubbard. V.R.C.P. 56(c).

## II.

 Plaintiffs next argue that the trial court erred in concluding that Northern's policy was unambiguous regarding its limitation of liability to the actual cash value of their house at the time of the fire. The provision of the policy relating to cov-

ered property losses is paragraph 3, which states in relevant part:

**3. Loss Settlement.** Covered property losses are settled as follows:

. . . .

b. Buildings under Coverage A or B at replacement cost without deduction for depreciation, subject to the following:

(1) If, *at the time of loss*, the amount of insurance in this policy on the damaged building is 80% or more of the *full replacement cost of the building immediately before the loss*, we will pay the cost to repair or replace, after application of deductible and without deduction for depreciation, but not more than the least of the following amounts:

(a) the limit of liability under this policy that applies to the building;

(b) the replacement cost of that part of the building damaged for like construction and use on the same premises; or

(c) the necessary amount actually spent to repair or replace the damaged building.

Plaintiffs contend that the quoted provision is ambiguous as to the date when the amount of loss should be determined, arguing that the phrase "at the time of loss" in the first sentence of paragraph 3.b.(1) relates only to the focal date for application of the threshold 80% coverage provision, and not to the date on which the amount of loss should be measured. But the phrase "full replacement cost of the building immediately before the loss" later in the same sentence leaves no question that the factual determination of loss should be made "immediately before the loss" and not at some indeterminate time.

And since, as we held earlier in this opinion, agent Wheeling was not negligent in her dealing with plaintiffs, there is no merit in their further argument that Northern is estopped to deny replacement-cost coverage on the basis of Wheeling's representations, even assuming arguendo that Northern would have been bound by her statements.

## III.

Plaintiffs argue next that the trial court erred in granting defendant Northern summary judgment as to plaintiffs' tort claim that the company acted in bad faith by failing to pay the benefits due under its policy. We have not yet been required to decide whether to recognize a cause of action for bad faith failure to pay first-party claims. See *Martell v. Universal Underwriters Life Ins. Co.*, 151 Vt. 547, 554, 564 A.2d 584, 589 (1989). We noted in *Martell*, however, that those courts that have recognized the action have required more than negligence on the part of the insurer, often requiring reckless conduct. *Id.* (citing *Washington v. Group Hospitalization, Inc.*, 585 F. Supp. 517, 520 (D.D.C. 1984); *Trimper v. Nationwide Ins. Co.*, 540 F. Supp. 1188, 1194 (D.S.C. 1982); *Noble v. National Am. Life Ins. Co.*, 624 P.2d 866, 868 (Ariz. 1981); *Anderson v. Continental Ins. Co.*, 271 N.W.2d 368, 376 (Wis. 1978)).

In *Anderson*, the court held that:

> To show a claim for bad faith, a plaintiff must show the absence of a reasonable basis for denying benefits of the policy and the defendant's knowledge or reckless disregard of the lack of a reasonable basis for denying the claim.
>
> . . . .
>
> . . . [A]n insurance company, however, may challenge claims which are fairly debatable and will be found liable only where it has intentionally denied (or failed to process or pay) a claim without a reasonable basis.

271 N.W.2d at 376–77.

Plaintiffs fall far short of the mark. If they were simply arguing that Northern's appraisal value of their house immediately before the fire was wrong, the question of the correct appraisal would be one of fact, and that issue of fact would not be suitable for determination by summary judgment, since a summary judgment presumes the absence of genuine issues of material fact.[2] V.R.C.P. 56(c). The essence of their argument on

---

[2] In their brief, plaintiffs misstate the issue when they argue that the work Mr. Booska performed was minimal and could not have reduced the replacement cost of the house by more than half. There is no argument over the

bad faith is that Northern took the "unconscionable position that it would pay only for the shell of the new house," that is, would pay only for the value of the house immediately prior to the fire, rather than paying out the face value of the policy, $95,000. In other words, there may be a factual debate about the extent of Ora Booska's renovation efforts on the date of the fire, but the basis for plaintiffs' claim of bad faith is not that area of difference, but rather Northern's position that if plaintiffs did not repair or replace the building, the limit of its liability would be the cash value of the building "immediately before the loss." In light of our holding that Northern's reading of its agreement was sound, reliance on that position did not represent bad faith on its part, since there was no genuine issue of material fact that the company had a reasonable basis on which to limit its offer to the actual value of the house immediately before the fire. The summary judgment was properly granted.

In like manner, Northern could not have intentionally inflicted emotional distress on plaintiffs by relying on a proper and correct legal reading of its insurance contract.

*Affirmed.*

*replacement* cost of the house as it was prior to the start of renovations, which, by all accounts was greater than the policy limit of $95,000. Plaintiffs' argument is that Northern should have paid the policy limit, whether or not they repaired or rebuilt the house, while Northern contends that the policy language limits its liability to actual value, prior to repair or replacement.