Poirier v. Farmers Ins. Group, No. 95-4-10 Oscv (Morris, J., Aug. 18, 2010)

[The text of this Vermont trial court opinion is unofficial.  It has been reformatted from the original.  The accuracy of the text and the accompanying data included in the Vermont trial court opinion database is not guaranteed.]

STATE OF VERMONT

SUPERIOR COURT                                        CIVIL DIVISION
Orleans Unit                                          Docket No. 95-4-10 Oscv


Denis Poirier
        Plaintiff


        v.


Farmers Insurance Group,
Mid-Century Insurance Company,
and Poulos Insurance, Inc.
        Defendants


## DECISION AND ORDER RE: DISMISSAL

The case is before the court on Defendant Poulos Insurance, Inc.'s motion to dismiss. Poulos Insurance, Inc. is represented by Glen Yates, Esq.  Plaintiff Denis Poirier opposes dismissal, and he is represented by William Neylon, Esq.  For the reasons below, the motion to dismiss is **GRANTED** in part and **DENIED** in part.

### FACTS

According to the allegations in the complaint, which the court assumes are true for present purposes, Plaintiff Denis Poirier raised horses as a hobby out of his Barton barn for the past eight years.  This hobby is not Poirier's profession, and he experiences a financial loss in most years from this activity.

Eight years ago, Poirier purchased a homeowner's premier policy from the Farmers Insurance Group (Farmers).  This policy was sold through Defendant Poulos Insurance, Inc. (Poulos).  Poulos acted as an agent for Farmers and Mid-Century Insurance Company for the duration of the policy.

According to Poirier, he fully disclosed the uses of his barn to Poulos at the time he obtained the policy.  He also kept Poulos informed of his continuing use of the barn throughout the eight years he held the policy.  Poirier was repeatedly given assurance by Poulos that his property was fully covered against loss by fire.

On August 8, 2009, a fire destroyed Poirier's horse barn and all the personal property within.  Poirier then promptly filed a claim with Farmers and Poulos, and Farmers sent a claims adjuster to assess the damages.  Later, Farmers sent Poirier a $2,500 check for some of the losses Poirier suffered.  However, Farmers denied Poirier's claims related to the loss of the barn.

Farmers explained that these losses were not covered under the "business exception" to the homeowner's policy.

After receiving the denial, Poirier repeatedly attempted to contact Poulos to no avail. When the Vermont Department of Banking and Insurance investigated the matter, Poulos falsely told the department that it had talked to Poirier following the fire. As a result of Defendants' failure to honor the insurance policy, Poirier has had to board his horses in another barn at an additional cost.

STANDARD OF REVIEW

Poulos has filed a motion to dismiss the complaint pursuant to V.R.C.P. 12(b)(6). As counsel are well aware, "Motions to dismiss for lack of a cognizable legal claim are not favored and are rarely granted." *Wentworth v. Crawford & Co.*, 174 Vt. 118, 120 (2002). The purpose of a motion pursuant to V.R.C.P. 12(b)(6) is "to test the law of the claim, not the facts which support it." *Powers v. Office of Child Support*, 173 Vt. 390, 395 (2002). "To sustain dismissal, the court must have no doubt that the alleged facts, if proven, would not entitle the plaintiff to relief under any legal theory." *Brigham v. State*, 2005 VT 105, ¶ 11, 179 Vt. 525 (mem.). In assessing the legal sufficiency of the plaintiff's pleadings, the court will "assume[] that all well pleaded factual allegations in the complaint are true, as well as all reasonable inferences that may be derived therefrom." *Bethel v. Mount Anthony Union High Sch. Dist.*, 173 Vt. 633, 634 (2002) (mem.) (citing *Richards v. Town of Norwich*, 169 Vt. 44, 48 (1999)).

DISCUSSION

Poirier alleges fives causes of action against Poulos: (1) consumer fraud; (2) unfair insurance trade practices; (3) breach of contract; (4) breach of covenant of good faith; and (5) negligence. Each theory is analyzed below.

A.    Consumer Fraud

Poirier first alleges that Poulos engaged in consumer fraud when it knew of Poirier's use of his barn, gave assurances that the barn was covered by insurance, and denied that the barn was covered when Poirier made a claim. Under Vermont's Consumer Fraud Act, "[u]nfair methods of competition in commerce, and unfair or deceptive acts or practices in commerce, are hereby declared unlawful." 9 V.S.A. § 2453(a). The Act provides for a private right of action against those alleged to have violated section 2453(a). See *id*. § 2461(b). It is unclear whether Vermont's Consumer Fraud Act applies to insurers. See *Greene v. Stevens Gas Service*, 2004 VT 67, ¶ 10, 177 Vt. 90. However, the instant motion is not the procedural vehicle by which to argue this matter. See *LeClair v. Reed ex rel. Reed*, 2007 VT 89, ¶ 6, 182 Vt. 594 (mem.) (courts should be especially reluctant to dismiss a cause of action on the basis of pleadings when the asserted theory of liability is novel or extreme).

> The [consumer fraud] statute prohibits deceptive acts and practices in commerce, which a complainant must establish with proof of three elements: (1) the representation or omission at issue was likely to mislead consumers; (2) the

consumer's interpretation of the representation was reasonable under the circumstances; and (3) the misleading representation was material in that it affected the consumer's purchasing decision.

*Jordan v. Nissan N. Am., Inc.*, 2004 VT 27, ¶ 5, 176 Vt. 465.

In this case, Poirier alleges that Poulos knew that Poirier's barn was not used for business purposes. Knowing this, Poulos represented that Poirier's barn was insured against fire. Based on this representation, it was reasonable for Poirier to believe that, in the event of a barn fire, Poulos would compensate him for his loss as long as the barn was not used for business purposes. It is reasonable to infer that Poulos's continued assurances about coverage, prompted by Poirier's continued disclosure about the use of his barn to Poulos, materially affected Poirier's decision to purchase and maintain the homeowner's policy at issue. Assuming from the facts alleged that Poirier's use of the barn had not changed, i.e., the barn was not used for business purposes, then Poulos's assurance that the barn would be covered against loss caused by fire was misleading because Poirier was not compensated for his loss after the 2009 barn fire. If, as Poirier asserts, his non-business use of the barn had not changed, then his claim should have been paid, and Poulos may have deceived Poirier by stating that his barn was insured against fire when it was not. Poirier's complaint adequately states a claim alleging consumer fraud, and Poulos's motion to dismiss Count I is **DENIED.**

### B. Unfair Insurance Trade Practices

Poirier next alleges that Poulos engaged in unfair insurance trade practices in violation of 8 V.S.A. § 4723. Section 4723 prohibits insurers from engaging in an unfair method of competition or an unfair or deceptive act or practice in the business of insurance. Section 4724 defines unfair methods of competition or unfair or deceptive acts or practices.

The following are hereby defined as unfair methods of competition or unfair or deceptive acts or practices in the business of insurance:

(1) Misrepresentations and false advertising of insurance policies. Making, issuing, circulating, or causing to be made, issued or circulated, any estimate, illustration, circular, statement, sales presentation, omission, or comparison which:

(A) misrepresents or fails to adequately disclose the benefits, advantages, conditions, exclusions, limitations or terms of any insurance policy . . . .

8 V.S.A. § 4724(1)(A).

Although Poirier has adequately alleged that Poulos misrepresented the policy to him, it is well established in Vermont that the Insurance Trade Practices Act does not create a private right of action. See *Wilder v. Aetna Life & Cas. Ins. Co.*, 140 Vt. 16, 19 (1981). "Although the Insurance Trade Practices Act, 8 V.S.A. §§ 4721-4726, provides administrative sanctions for unfair and deceptive acts within the insurance industry, . . . the Act does not create a private right

of action." *Larocque v. State Farm Ins. Co.*, 163 Vt. 617, 618 (1995) (mem.). Therefore, Poirier cannot recover from Poulos under 8 V.S.A. §§ 4721-4726, and Poulos's motion to dismiss Count II is **GRANTED.**

### C. Breach of Contract

Poirier further alleges that Poulos breached the insurance policy when it failed to compensate Poirier for the loss of his barn. "To make out a viable claim for breach of contract a complaint need only allege (1) the existence of an agreement, (2) adequate performance of the contract by the plaintiff, (3) breach of contract by the defendant, and (4) damages." *Eternity Global Master Fund Ltd. v. Morgan Guar. Trust Co.*, 375 F.3d 168, 177 (2d Cir. 2004) (quotation omitted).

In this case, a contract exists between the parties in the form of an insurance policy. The insurance policy provided that Poulos would pay Poirier damages to his barn resulting from fire as long as the barn was not used for a business purpose. Poirier adequately performed his obligation under the contract by paying the insurance premiums. It is alleged that Poulos breached the policy by failing to pay Poirier's claim after his barn was destroyed. According to Poirier, the barn was not used for business purposes, and therefore, Poulos had no legitimate reason to deny his claim. As a result of this denial, Poirier suffered damages because he has had to pay money to stable his horse in another barn.

Poulos appears to counter that the denial of the claim was warranted because the barn was used for business purposes, and therefore no breach occurred when Poulos denied the claim under the policy's "business exception." This assertion that Poirier used his barn for business purposes is a disputed issue of fact. No evidence was presented with Poulos's motion, and the court must assume that the facts alleged in the complaint are true. Poirier alleges that he "raised horses as a hobby out of the barn." (Compl. ¶ 5.) Therefore, Poirier has adequately alleged a viable claim for breach of contract, and Poulos's motion to dismiss Count III is **DENIED.**

### D. Breach of Covenant of Good Faith

Poirier also alleges that Poulos breached the implied covenant of good faith and fair dealing when "Defendants unreasonably erred in denying coverage to Plaintiff." (Compl. ¶ 39.) In Vermont, the covenant of good faith and fair dealing is implied in every contract. See *Carmichael v. Adirondack Bottled Gas Corp.*, 161 Vt. 200, 208 (1993). Its underlying principle "is that each party promises not to do anything to undermine or destroy the other's rights to receive the benefits of the agreement." *Id.* The covenant "exists to ensure that parties to a contract act with 'faithfulness to an agreed common purpose and consistency with the justified expectations of the other party.'" *Id.* (quoting Restatement (Second) of Contracts § 205 cmt. a (1981)). "[L]ittle can be said in general as to what constitutes a breach of the covenant," and "[i]n the end, good faith is ordinarily a question of fact, one particularly well-suited for juries to decide." *Id.* at 208, 209.

The parties have not adequately briefed the court on whether the allegations in the complaint constitute a breach of the covenant. According to the complaint, Poirier alleges that

4

"[i]mmediately following the denial of coverage, Plaintiff . . . made repeated attempts to contact agents at Poulos." (Compl. ¶ 18.)  However, Poulos "refused to discuss the case with Plaintiff and . . . further refused to allow Plaintiff to discuss the matter with the Agent of Record." *Id*. ¶ 19.  Poulos then "made false statements to the State of Vermont Department of Banking and Insurance during its investigation of the matter.  [Poulos] claimed, in writing, to have spoken to Plaintiff following the fire.  The conversation never took place." *Id*. ¶ 20.

"Not every breach of contract . . . is a breach of the implied covenant of good faith and fair dealing." *Nagel v. Provident Mut. Life Ins. Co*, 749 N.E.2d 710, 715 (Mass. App. Ct. 2001).  Although it is not entirely clear to the court that Poulos's alleged actions are a breach of the covenant, the court is reluctant to dismiss the claim because a reasonable jury may differ.  The New Hampshire Supreme Court has noted that "'[f]air dealing' may include giving the opposing party fair notice and an opportunity to cure any significant objections before being held liable." *Barrows v. Boles*, 687 A.2d 979, 986 (N.H. 1996).  In the instant case, Poirier was not given an opportunity to cure, i.e., challenge, Poulos's conclusion that Poirier was using his barn for a business purpose before he was denied coverage.  Although he tried to discuss the matter with Poulos repeatedly, Poulos would not talk to him about it.  A reasonable jury might find that this behavior was unjustified and undermined Poirier's right to receive the benefits of the insurance policy by showing that the barn was not used for business purposes.  Therefore, Poulos's motion to dismiss Count IV is **DENIED.**

E.    Negligence

Finally, Poirier alleges that Poulos acted negligently when if failed "to protect Plaintiff and Plaintiff's property from loss by writing an appropriate insurance policy." (Compl. ¶ 42.)  "An action on an insurance policy and an action for negligence and breach of contract for failure to procure such a policy are not inconsistent causes of actions.  While not inconsistent, however, they are not identical." *Hill v. Grandey*, 132 Vt. 460, 464 (1974).  "To prevail in a common law negligence action, a plaintiff must demonstrate that the defendant owed a legal duty to the plaintiff, the duty was breached, the breach constituted the proximate cause of plaintiff's harm, and plaintiff suffered actual loss or damage as a result." *Rubin v. Town of Poultney*, 168 Vt. 624, 625 (1998) (mem.).

"The duty of an insurance agent is to use reasonable care and diligence to procure insurance that will meet the needs and wishes of the prospective insured, as stated by the insured." *Rocque v. Coop. Fire Ins. Ass'n*, 140 Vt. 321, 326 (1981) (citing *Hill*, 132 Vt. at 460).  "The agent's task is to be generally fair and truthful in explaining the nature of a policy, not to warn the insured about the impact of necessarily complex contract language on every eventuality." *Booska v. Hubbard Ins. Agency, Inc.*, 160 Vt. 305, 310 (1993).  "Once a policy is procured as requested and is consistent with the applicable standard of care, no further duty is owed to the insured by the agent with respect to this insurance." *Id*. (citing *Rocque*, 140 Vt. at 326-27).

In this case, Poirier asked Poulos to procure an insurance policy that would cover his barn where he "raised horses as a hobby." (Compl. ¶ 5.)  Since "[r]aising and selling horses [was] not Plaintiff's profession," (Compl. ¶ 6) Poulos procured a policy that met Poirier's needs and

5

wishes, as stated by Poirier: a policy that insured Poirier's barn against fire so long as he did not use it for business purposes. Poirier "fully disclosed the uses of his barn property to Poulos at the time the policy was written and kept Poulos fully informed as to the use of the property during the entire eight (8) years that Poulos had written policies for Plaintiff." (Compl. ¶ 10.) There is no indication that Poirier put Poulos on notice that he would be using his barn for business purposes and that the policy Poulos sold (excluding business activity) would not meet his needs.

There is no allegation that Poulos was not fair and truthful in explaining the nature of the policy. Presumably, the policy itself is clear: the barn would not be insured against loss if Poirier used it for business. Poulos was under no duty to explain to Poirier that using the barn for business activity was not covered under the policy because Poirier made clear that he was using the barn for hobby purposes only. Once Poulos issued the policy as Poirier requested, Poulos owed no further duty to Poirier. The fact that Poulos did not pay the claim, in violation of the terms of the policy, may give rise to a cause of action for breach of the policy, but it is not negligent sale of insurance.

In support of his argument that his negligence claim should not be dismissed, Poirier cites *Dodge v. Aetna Casualty & Surety Co.*, 127 Vt. 409 (1969). In *Dodge*, the Court held:

> In an action on a contract of insurance, the insurance company is generally considered estopped to deny liability on any matter arising out of the fraud, misconduct, or negligence of an agent of the company. If either party must suffer from an insurance agent's mistake, it must be the insurance company, his principal.

*Id*. at 412 (quotation omitted). The *Dodge* Court ruled in favor of the insured after the record showed a mistake on the part of the agent as to the extent of coverage afforded by the policy in question. See *id*. at 411. The Court also found that the agent was negligent in not having determined that the policy issued did not conform to the insured's request that he desired "insurance for all I need—everything." *Id*.

By contrast, Poirier does not allege any fraud, misconduct, or negligence by Poulos at the time he obtained the policy. There is no allegation that Poulos mistook Poirier's insurance needs; Poirier asked Poulos to cover his barn for non-business purposes, and it did. Poulos adequately determined that the policy issued conformed to Poirier's request that the barn—used only for hobby horses—be insured against fire. Unlike the plaintiff in *Dodge*, there is no indication that Poirier told Poulos that he wanted insurance against "everything," including business activity. The plaintiff in *Dodge* informed his agent of his new venture and told him that "he wanted all the insurance he needed for that type of business." *Id*. at 410. By contrast, Poirier did not tell Poulos that he would be using the barn for business purposes, and Poulos was under no duty to ask after Poirier made clear that the barn was used for hobby purposes only.

Again, the dispositive issue in this case is not whether the policy covered Poirier's barn. The issue is whether Poirier's stated use of the barn, as contemplated in the policy, conformed to his actual use the barn. If so, then the policy should cover the barn; Poirier got what he

6

bargained for, and Poirier was not negligent.  If the stated use did not conform to the actual use, then it was Poirier's failure to inform and not Poulos's failure to inquire that resulted in the claim denial.  Since it appears that Poulos sold Poirier a policy that conformed to Poirier's stated needs, Poulos is no longer liable to Poirier in tort.  The facts stated in the complaint do not allege that Poulos breached a duty owed to Poirier.  Consequently, Poulos's motion to dismiss Count V is **GRANTED**, and Poirier's negligence claim is dismissed.

ORDER

For the reasons above, Poulos's motion to dismiss is **GRANTED** in part and **DENIED** in part.  The motion is **GRANTED** with regard to Counts II and V of the complaint.  The motion is **DENIED** with regard to the remainder of the complaint.  Count II (unfair insurance trade practices) and Count V (negligence) are hereby dismissed, and Counts I, III, and IV remain.

Dated at Newport, Vermont, this _____ day of August, 2010.


_____
Walter M. Morris, Jr.
Presiding Judge

7