Sharon Academy v. Wieczorek Insurance, Inc., et al, No. 442-7-13 Wncv (Toor, J., Nov. 13, 2013)

[The text of this Vermont trial court opinion is unofficial. It has been reformatted from the original. The accuracy of the text and the accompanying data included in the Vermont trial court opinion database is not guaranteed.]

VERMONT SUPERIOR COURT
WASHINGTON UNIT
CIVIL DIVISION

| | |
|---|---|
| THE SHARON ACADEMY <br>   Plaintiff <br><br> v. <br><br> WIECZOREK INSURANCE, INC., et al., <br>   Defendants | Docket No. 442-7-13 Wncv |

RULING ON MOTION TO DISMISS

Plaintiff ("the Academy") brings this case to recover against its insurance agent and its insurance company for any damages resulting from a separate tort case pending against it. The Academy claims that the insurer has wrongly denied the claim and declined to provide a defense, and that, in the alternative, the insurance agent negligently failed to procure the proper insurance. The agent has now moved for dismissal of the claim against it based upon the economic loss rule. Plaintiff is represented by John Sartore, Esq; the agent is represented by Walter E. Judge, Jr., Esq. and Matthew Borick, Esq.

Background Facts

The relevant facts as alleged in the complaint are as follows. The case that spawned this one is a tort case brought by Simone Labbance, who alleges that she was sexually assaulted while in India as a student at the Academy. The Academy made a claim for coverage with defendant Massachusetts Bay Insurance Company. The company denied the claim and declined to provide a defense in the lawsuit. Although the complaint does not explain the basis for the

denial, the motion to dismiss states that the denial was on the ground that "the alleged incident took place outside the policy's coverage territory." Motion at 4.[1]

The policy was obtained through an insurance agent, Wieczorek Insurance, Inc. ("Wieczorek").[2] Prior to the underlying case being filed by Labbance, when it was apparent it might be filed, Wieczorek and the Academy had communications discussing what coverage was available for such a claim. In the course of those communications there were emails from Massachusetts Bay acknowledging that – contrary to its position now – it would provide coverage. Once the claim was actually submitted, however, it was denied.

Discussion

The claim against Wieczorek is a negligence claim, alleging that if it turns out that the policy does not provide coverage, then Wieczorek "negligently failed to obtain the coverage" needed. Complaint ¶ 54. The complaint further alleges that "[a]s a professional insurance agency, Wieczorek had a duty to exercise reasonable care to assess the insurance needs of [the Academy] . . . in regard to the semester abroad program and to obtain full and complete coverage[.]" Id. at 51. Wieczorek argues that such a claim is precluded by the economic loss rule.

The general idea of the economic loss rule is that it "prohibits recovery in tort for purely economic losses." EBWS, LLC v. Britly Corp., 2007 VT 37, ¶ 30, 181 Vt. 513. As relevant here, it essentially draws a line between tort and contract claims, assigning certain types of relationships to the contract category. The Vermont Supreme Court has explained:

> In tort law, duties are imposed by law to protect the public from harm, whereas in contract the parties self-impose duties and protect themselves through bargaining. Thus, negligence actions are limited to those involving unanticipated physical injury, and

---

[1] The motion references a second policy, but that seems to be separate from the one on which the complaint is based.

[2] Although in some circumstances they mean different things, the court will use the terms insurance agent and insurance broker interchangeably here to describe Wieczorek.

2

> claimants cannot seek, through tort law, to alleviate losses incurred pursuant to a contract.

Id. "Negligence law does not generally recognize a duty to exercise reasonable care to avoid intangible economic loss to another unless one's conduct has inflicted some accompanying physical harm, which does not include economic loss." Gus' Catering, Inc. v. Menusoft Sys., 171 Vt. 556, 558 (2000) (mem.).

The economic loss doctrine, however, is one of the messier areas of the law. "Doubts about the coherence of a generally applicable economic loss rule have frequently been raised." Vincent R. Johnson, The Boundary-Line Function of the Economic Loss Rule, 66 Wash. & Lee L. Rev. 523, 529 (Spring 2009). "Courts and commentators struggle to define the doctrine and its scope." Benjamin Edwards, Rolling Back The Economic Loss Doctrine In Securities Disputes Against Financial Intermediaries, 20 No. 1 PIABA Bar Journal 39 (2013). It has been called "one of the most confusing doctrines in tort law." R. Joseph Barton, Drowning in a Sea of Contract: Application of the Economic Loss Rule to Fraud and Negligent Misrepresentation Claims, 41 William and Mary Law Review 1789 (May 2000). Its outlines "are difficult to define and vary by jurisdiction." Rolling Back at 41. The origin of the rule "is subject to some debate and its application and parameters are somewhat ill-defined." Moransais v. Heathman, 744 So. 2d 973, 979 (Fla. 1999).

Some cases talk about special relationships, some about professional duties. Various rationales for the rule are offered. Florida has, after years of expressing concern about the scope of the rule, recently limited its application to products liability claims. Tiara Condominium Ass'n Inc. v. Marsh & McLennan Companies Inc., 110 So. 3rd 399, 407 (Fla. 2013). While acknowledging that the rule had its roots in the product liability arena, Vermont has in the past declined to so restrict the doctrine, holding that it now "clearly applies to commercial disputes

outside the confines of product liability." Springfield Hydroelectric Co. v. Copp, 172 Vt. 311, 314-15 (2001). In Vermont, "[t]he underlying premise of the economic loss rule is that negligence actions are best suited for resolving claims involving unanticipated physical injury, particularly those arising out of an accident. Contract principles, on the other hand, are generally more appropriate for determining claims for consequential damage that the parties have, or could have, addressed in their agreement." Id. at 314 (internal quotation omitted).

While the record does not disclose whether there was a written contract between the parties, and for reasons that are not apparent no breach of contract claim has been made, there was certainly at least an oral contract between the Academy and Wieczorek. Thus, on its face, the claim here against Wieczorek falls squarely within the economic loss rule. However, there can be exceptions to the rule.

The Academy argues that there is a "professional services exception" to the economic loss rule, and that it applies here. The exception is also referred to as the "special relationship" exception. The Vermont Supreme Court has not actually adopted such an exception, although it has suggested that it might someday do so, stating that there "*might* be recovery for purely economic losses in a limited class of cases involving violation of a professional duty." EWBS, 2007 VT 37 at ¶ 30 (emphasis added). The Court explained: "Purely economic losses may be recoverable in professional services cases because the parties have a special relationship, which creates a duty of care independent of contract obligations." Id. at ¶ 31. However, the scope of such a possible exception is limited: "To fit within this exception, the parties must have "a special relationship, which creates a duty of care independent of contract obligations." Long Trail House Condo. Ass'n v. Engelberth Const., Inc., 2012 VT 80, ¶ 13, 192 Vt. 322, quoting EBWS at ¶ 31. As another court has put it, "a tort remedy does not arise from a contractual

4

relationship unless the breaching party owes an independent duty imposed by law." Saltiel v. GSI Consultants Inc., 788 A. 2d 268, 280 (N.J. 2002).

Our Supreme Court found no exception to the rule for a claim that an insurance *adjuster* had negligently handled a plaintiff's claim, delaying payments under the policy and allegedly causing further damage to the insured property. Hamill v. Pawtucket Mutual Insurance Co., 2005 VT 133, 179 Vt. 250. The Court noted that: "Hamill is seeking recovery for losses stemming from the failure of his expectations regarding insurance coverage," and concluded that "such damages are most accurately categorized as purely economic losses generally recoverable under contract law, but not tort law." Id. at ¶ 9. The Court noted that the insurance contract provided the sole basis for recovery: "insureds may seek redress for such injuries through breach-of-contract and bad-faith actions against their insurers." Id. at ¶ 14. The Court also rejected the idea that the licensing of insurance adjusters created a special duty to the insured. It noted that the Legislature's requirement of licensing "does not demonstrate . . . a legislative intent to create a duty on the part of adjusters that would form the basis of an independent tort action against them." Id. at ¶¶ 17-18.

Hamill is not controlling here, however, because it related to insurance adjusters employed by the insurance companies, not to insurance agents such as Wieczorek. The question before the court is whether the same answer is required in this situation. To answer this question, the court must look to other Vermont cases.

The Vermont Supreme Court has recognized a duty of care running from an insurance agent to the insured: "The duty of an insurance agent is to use reasonable care and diligence to procure insurance that will meet the needs and wishes of the prospective insured, as stated by the insured." Rocque v. Co-operative Fire Ins. Assoc., 140 Vt. 321, 326 (1981). In Booska v.

5

Hubbard Ins. Agency, Inc., 160 Vt. 305 (1993), the Court reaffirmed this principle. Id. at 309-10. Rocque was not addressing the economic loss rule, but Booska was. In Booska, the Court found the claim barred by the rule. However, the claim there was for something beyond the scope of the duty the court had recognized. The plaintiff asserted that the agent had "a duty to inquire about special circumstances within the insurance purchaser's control that might affect the quality or degree of protection available under the policy." Id. at 309. The Court found that such a duty went beyond that defined in Rocque. Booska, 160 Vt. at 309-10. The Court held that once the policy is procured "as requested and is consistent with the applicable standard of care," no further duty is owed. Id. at 310.

The claim Plaintiff makes in this case can arguably fit on either side of the Roque/Booska line. Construed broadly in Plaintiff's favor as it must be on a motion to dismiss, the complaint can fairly be read to allege that Wieczorek did not "use reasonable care and diligence to procure insurance that will meet the needs and wishes of the prospective insured, as stated by the insured." Rocque, 140 Vt. at 326. It sufficiently alleges a breach of the duty described in that case.

The question, then, is whether the economic loss rule nonetheless bars a claim for breach of such a duty. It is hard to imagine how such a duty could ever be enforced if a suit for its breach required physical harm. By its nature, the injury for a failure to procure insurance will be solely economic: a lack of payment for financial losses. Thus, the economic loss rule, if applied here, would vitiate the existence of any such duty. *Accord*, Hydro Investors Inc. v. Trafalgar Power Inc., 227 F. 3d 8, 18 (2d Cir. 2000) (noting that because most professional malpractice claims involve only economic losses, "the better course is to recognize that the rule allows such recovery in the limited class of cases involving liability for the violation of a professional

6

duty."). Because Vermont recognizes such a duty, the court concludes that this creates a limited "professional duty" exception to the economic loss rule.[3] This is consistent with what the Supreme Court said in Springfield Hydroelectric: "The underlying analysis turns on whether there is a duty of care independent of any contractual obligations." 172 Vt. at 316 (internal quotation omitted); *see also*, Cooper v. Berkshire Life Ins. Co., 810 A.2d 1045, 1070 (Md. App. 2002) ("The existence of this independent duty means that insurance agents and brokers fall within the . . . exception to the economic loss rule."); Nixon v. United States, 916 F. Supp. 2d 855, 861 (N.D. Ill. 2013) ("Where a party has a duty independent of any contractual relationship, the economic loss doctrine does not apply.").

Vermont is not alone in recognizing a duty to procure requested insurance, creating tort liability. Although not expressly discussing the economic loss rule, other courts have allowed tort as well as contract claims against insurance agents for breaches of such a duty. *See, e.g.*, Ursini v. Goldman, 173 A. 789, 791 (Conn.1934)(where insurance agent "undertakes to procure a policy affording protection against a designated risk," and he fails to do so, insured "may sue either for breach of the contract or in tort for breach of duty"); Peterson v. Big Bend Ins. Agency, Inc., 202 P. 3d 372, 377 (Wash. App. 2009)("An insured may bring an action against his insurance agent in negligence as well as contract."); Extended Stay Inc. v. American Auto Ins. Inc., 375 S.W.3d 834, 841 (Mo. App. 2012)("Missouri courts have long held that a broker or agent who undertakes to procure insurance for another for compensation owes a duty of reasonable skill, care, and diligence in obtaining the requested insurance and may be sued in tort for negligent failure to procure that insurance.").

---

[3] The Academy argues that Wieczorek held itself out as having licensed brokers, and that the Academy relied upon Wieczorek's skill and expertise to determine what coverage was needed for study-abroad programs. Based upon these facts, the Academy alleges a special relationship existed. The court is not ruling based upon those facts, but upon the duty already established in Vermont law.

Other jurisdictions have expressly considered whether the economic loss doctrine bars recovery against an insurance agent for claims such as the one here. In SMI Owen Steel Co. Inc. v. Marsh USA, Inc., 520 F.3d 432 (5th Cir. 2008), the Fifth Circuit addressed this very issue. It noted that Nevada courts had repeatedly recognized a duty to procure requested insurance, but had also recognized the economic loss doctrine. Analyzing how the two principles meshed, the Circuit held that "Nevada's economic loss doctrine does not bar negligence claims involving the violation of a professional, extra-contractual duty imposed by law," and that Nevada's cases had created such an independent "extra-contractual" duty of care. Id. at 443. The court noted that the majority of other jurisdictions "hold that the economic loss doctrine does not bar a claim against an insurance broker for negligent failure to procure insurance." Id.

Likewise, an Illinois decision discussed the question at length and concluded that an insurance broker's duty to the insureds "was not solely defined by contract, but rather was extracontractual in nature" and thus the economic loss rule did not bar a negligence claim. Kanter v. Deitelbaum, 648 N.E. 2d 1137, 1139-40 (Ill. App. 1995). The court held that failing to obtain requested insurance "was a breach of [the broker's] duty to observe reasonable professional competence which existed independently of" any contract. Id. at 1140.[4] *See also*, Terracon Consultants Western Inc. v. Mandalay Resort Group, 206 P. 3d 81, 87 (Nev. 2009)(courts have made exceptions to the rule in certain categories of cases, including "professional negligence actions against attorneys, accountants, real estate professionals, and insurance brokers")(citations omitted); Nelson v. Anderson Lumber Co., 99 P. 3d 1092, 1100

---

[4] Ohio law is to the contrary. There, "[i]t  has been repeatedly held that regardless of the general duty owed by an insurance broker to an insured to exercise diligence in obtaining insurance, the economic loss doctrine bars pure negligence claims (and professional negligence claims) against insurance companies, agents or brokers." Momentive Speciality Chemicals, Inc. v. Chartis Speciality Ins. Co., No. 2:11–cv–00583, 2012 WL 832288 at * 4 (S.D. Ohio, March 12, 2012). Ohio law nonetheless permits claims against insurance brokers for negligent misrepresentation. Id. at * 5.

(Idaho App. 2004)("The 'special relationship' exception generally pertains to claims for personal services provided by professionals, such as physicians, attorneys, architects, engineers, and insurance agents."); Cincinnati Ins. Co. v. Ruch, No. 3:12cv877, 2013 WL 1683669 at \*7 (E.D.Va. April 17, 2013) (because insurance agent has a common law duty of care, the economic loss rule does not apply).

The Sixth Circuit has also recently addressed a case analogous to this one. A spectator was killed by the collapse of an inflatable slide at a Cleveland Indians baseball game. It turned out that the entertainment company's insurance agent had failed to obtain proper insurance to cover such an accident despite an explicit request to do so. The Indians were an additional insured on the policy, so the court first addressed whether the duty running from the broker to the insured included the team. The Court held that it did, and then addressed the economic loss issue, saying: "we conclude that the economic loss doctrine does not generally bar claims for economic losses suffered when an insurance broker negligently procures insurance." Cleveland Indians Baseball Co., L.P. v. New Hampshire Ins. Co., 727 F.3d 633, 640 (6th Cir. 2013).

Interestingly, there is currently a draft Restatement of Torts which attempts to clarify the nature of the economic loss doctrine. Although it has not yet been adopted, it provides some support for the court's analysis. The proposal would set forth two rules relevant here: (1) "Except as provided elsewhere in this Restatement, there is no liability in tort for economic loss caused by negligence in the performance or negotiation of a contract between the parties;" and (2) "A professional is subject to liability in tort for economic loss caused by the negligent performance of an undertaking to serve a client." Restatement (Third) of Torts--Liability for Economic Harm, Tentative Draft No.1, § 3, Preclusion of Tort Liability Arising from Contract (Economic Loss Rule), and § 4, Professional Negligence Resulting in Economic Loss (April 2012). In defining

9

"professionals," the Restatement draft states: "Lawyers, doctors, and accountants are invariably regarded by courts as professionals; *insurance agents* and architects are examples of additional parties this Restatement would so recognize, whereas construction contractors and tradesmen are on the other side of the line." Id. § 4 cmt b (emphasis added).[5]

The court concludes that because Vermont has recognized a broker's duty to obtain the insurance requested by an insured, claims by an insured for breach of that duty are not barred by the economic loss rule.

<u>Order</u>

The motion to dismiss is denied. The motion to amend the complaint, being unopposed, is granted. A status conference will be scheduled to discuss a discovery schedule and possibly early mediation.

Dated at Montpelier this 13th day of November, 2013.

_____
Helen M. Toor
Superior Court Judge

---

[5] Of course, recognizing the exception is a long way from finding liability. *See, e.g.*, Id., cmt d, Illustration 3: "Client hires Professional to obtain insurance against various hazards. Professional competently procures the insurance. Hazards materialize, and Client has insufficient insurance to cover them. Client suffers financial losses and sues Professional for malpractice, claiming that Professional negligently failed to recommend additional insurance. Court finds that Client did not ask for such recommendations, that Professional did not purport to advise about them, and that there is no custom calling for agents to offer unsolicited recommendations. Professional is not liable in tort to Client."