STATE OF VERMONT

SUPERIOR COURT                                         ENVIRONMENTAL DIVISION
Docket No. 154-12-15 Vtec

| Old Lantern Non-Conforming Use |
| --- |

## ENTRY REGARDING MOTION

Count 1, Municipal ZBA Other (154-12-15 Vtec)

Title:              Motion for Reconsideration (Motion 13)

Filer:              Adrian and Alison Wolverton

Attorney:        James A. Dumont

Filed Date:      July 18, 2017

Response in Opposition filed on 08/04/2017 by Attorney Murphy for
    Appellees Lisa and Roland Gaujac

Reply filed on 08/11/2017 by Attorney Dumont for Appellants Adrian
    and Alison Wolverton

**The motion is GRANTED.**

This case is an appeal of a decision by the Town of Charlotte Zoning Board of Adjustment ("ZBA") concluding that the use of the Old Lantern Inn in Charlotte, Vermont, to host weddings and other events is a pre-existing, nonconforming use that does not require a zoning permit. The appeal is brought by Adrian and Alison Wolverton (the "Wolvertons" or "Appellants"), and the Old Lantern Inn is owned and operated by Roland and Lisa Gaujac ("the Gaujacs" or "Appellees").

On July 3, 2017, we issued a decision on the Wolvertons' motion for summary judgment on Questions 2, 3, and 8, and in the alternative to clarify Question 8; and on Old Lantern's motion to dismiss Questions 1, 4, 5, 6, and 7, and to limit the scope of Questions 2, 3, and 8. See Old Lantern Non-Conforming Use, No. 154-12-15 Vtec (Vt. Super. Ct. Envtl. Div. July 3, 2017) (Durkin, J.). We revisit these legal issues, based upon the Wolvertons' motion to reconsider our July 3, 2017 decision.

In their motion to reconsider, filed July 17, 2017, the Wolvertons request that this Court strike or substantially revise paragraphs 8, 10, 11, 12, 15, and 16 of the Factual Background and pages 12 and 13 of the Discussion, and vacate our dismissal of Questions 4 and 6 from the Statement of Questions. The Gaujacs opposed the motion in an August 4, 2017 filing, and the Wolvertons responded in an August 11, 2017 filing.

Trial courts have inherent authority to alter interlocutory orders.  While there is no clear standard for deciding such matters, this Court has historically treated such motions to reconsider similarly to motions to amend or alter a final judgment under V.R.C.P. 59(e), although the 10-day time limit is not strictly applied.  See, e.g., In re Lathrop Ltd. P'ship I, Nos. 122-7-04 Vtec, 210-9-08 Vtec, and 136-8-10 Vtec, slip op. at 10 (Vt. Super. Ct. Envtl. Div. Apr. 12, 2011) (Durkin, J).  The Court has identified four basic grounds for granting such a motion: (1) to "correct manifest errors of law or fact upon which the judgment is based"; (2) to allow a moving party to "present newly discovered or previously unavailable evidence"; (3) to "prevent manifest injustice"; and (4) to respond to an "intervening change in the controlling law."  Id. at 10–11 (quoting 11 Wright, Miller & Kane, Federal Practice and Procedure: Civil 2d § 2810.1).

While relief pursuant to a motion to reconsider is "an extraordinary remedy which should be used sparingly," In re Zaremba Group Act 250 Permit, No. 36-3-13 Vtec, slip op. at 2 (Vt. Super. Ct. Envtl. Div. Apr. 10, 2014) (Walsh, J.) (quoting 11 Wright, Miller, & Kane, Federal Practice and Procedure: Civil 2d § 2810.1), this Court is persuaded by Appellants that the remedy is warranted.  The Court therefore **GRANTS** Appellants' motion to reconsider our July 3, 2017 decision to correct manifest errors of law and fact upon which it was based.  As explained below, the Court amends and clarifies its July 3, 2017 decision to correct the record as described and vacate the dismissals of Questions 4 and 6.

### Factual Background

### I.    Footnote 2 and Paragraph 10

The Affidavit of James Dickerson, a former owner of the Old Lantern Inn ("Old Lantern"), was critical to our July 3, 2017 decision.  See Old Lantern, No. 154-12-15 Vtec at 3 n.2 (July 3, 2017) ("Appellants . . . provide no first-hand sworn statements to contradict Mr. Dickerson's sworn statement.").  Mr. Dickerson stated that he has been familiar with the Old Lantern property and its operation since the 1950s and the current use of the facility is consistent with the historic use.  Specifically, he said the west lawn was used for wedding ceremonies from 2000 to 2006, and has "always been used actively as part of Old Lantern events" including auctions amplified by loudspeakers.[1]  Dickerson Aff. ¶ 22.

Karen Frost, a neighbor who purchased property adjoining the Old Lantern in 2002, offered an apparently contradictory statement in her affidavit.  She stated that she experienced "little disturbance" from events at the Old Lantern between 2002 and 2006, before the Gaujacs purchased Old Lantern.  Frost Aff. ¶ 5.  Ms. Frost explained that after French doors and stairs were installed to the west side of the Old Lantern building, the west lawn "became the location for wedding ceremonies including the use of amplified music . . . ."[2]  Id. ¶ 9.

After re-examining these two affidavits, the Court concludes that Ms. Frost's sworn statement contradicts Mr. Dickerson's sworn statement, contrary to our determination in

---

[1] Mr. Dickerson refers to the yard on the west end of the Old Lantern building as the "west lawn," a term which we adopt here for simplicity.

[2] In 2008, two existing doors in the middle of the west side of the Old Lantern building were replaced by French doors and stairs were installed where they had been previously located.  Lisa Gaujac Aff. ¶¶ 14–15.

Footnote 2.  The Court therefore strikes the second paragraph of Footnote 2 on page 3 which begins "While Appellants contest some of these facts . . . ."

We next to turn to the last sentence of paragraph 10 of the Factual Background, which in the July 3, 2017 decision reads: "Appellants assert that the use of the west lawn and amplification systems generally began in recent years, although Appellants do not offer specifics on when this alleged new activity began."  We hereby correct this sentence by replacing it with the following: "Appellants assert that the use of the west lawn and amplification systems began after French doors and stairs were added to the west side of the Old Lantern building."

## II.        Paragraphs 11, 12, and 15

Appellants have requested that the Court strike or substantially revise paragraphs 11, 12, and 15 in the Factual Background, also based on the competing sworn statements from Mr. Dickerson and Ms. Frost.  The Court declines.

Paragraph 11 states that Old Lantern provided firsthand knowledge in affidavits that the west lawn has historically been used during weddings and other events.  This Factual Background statement should read "affidavit," singular, because the historical information was provided solely by Mr. Dickerson.  Beyond that minor change, however, the statement is accurate.[3]  Mr. Dickerson provided historical, first-hand information about the uses at Old Lantern, which Ms. Frost does not contest.  In his affidavit, Mr. Dickerson stated that during the time he held auctions at the Old Lantern, starting in the early 1980s and for the next two decades, the Old Lantern was used for weddings as well as many other events such as large music concerts, pig roasts, and family gatherings.  Dickerson Aff. ¶¶ 13–14, 16.  Ms. Frost did not purchase the neighboring property until 2002, and did not provide firsthand knowledge about the use of the Old Lantern prior to her purchase.  Frost Aff. ¶¶ 1, 4–11.

The Court also declines to strike or substantially revise paragraphs 12 and 15.  Ms. Frost, Appellants, and the other Interested Persons do not contest Ms. Gaujac's representation that in 2008 she and her husband replaced the doors on the western barn wall with a set of French doors and re-installed steps from the doors to the west lawn.  Ms. Gaujac provides these facts in her sworn affidavit, ¶¶ 14–15; the sworn affidavits from the Appellants do not contradict these facts.  Ms. Frost states that after 2006, when the Gaujacs' purchased the Old Lantern, the west side of the building was altered with the installation of double doors, a landing, and a stairway.  Frost Aff. ¶ 9.  Ms. Frost does not assert that these alterations created doors and stairs where none had historically existed.  Paragraph 15 of the Court's Factual Background restates this premise: that the Wolvertons did not submit evidence that contradicts Ms. Gaujac's representations concerning the double doors and the steps.  The paragraph also states that the Wolvertons did not contradict Ms. Gaujac's statement that the Town Zoning Administrator visited the Old Lantern around the time of the installations to inspect the double doors and steps and "assured

---

[3]  We note that at this pre-trial stage of these proceedings, we do not make factual determinations, but rather merely search the record for disputed and undisputed facts.  We are only authorized to render factual findings after being presented at trial with testimony and other evidence, and after completing the process of assessing the credibility of such evidence.  Fritzeen v. Trudell Consulting Engineers, Inc., 170 Vt. 632, 633 (2000)(mem.), citing Booska v. Hubbard Ins. Agency, Inc., 160 Vt. 305, 309 (1993).

[the Gaujacs] that no permit was necessary." Gaujac Aff. ¶ 16. We therefore conclude that these paragraphs from our Factual Background section do not require correction.

### III.     Paragraph 8 and Footnote 4

The Court wishes to make one additional change to the Factual Background, in paragraph 8, which is also based on its re-examination of the sworn statements. In its July 3, 2017 decision, the Court determined that the Wolvertons had failed to provide credible evidence of an increase in the number of events held at the Old Lantern. Ms. Frost, however, stated that the frequency of use changed after 2006: "What was once an occasionally used event hall, became a wedding factory, often hosting 3 weddings per weekend." Frost Aff. ¶ 11. This somewhat contradicts Mr. Dickerson's sworn statement, in which he asserts that two to three weddings or events each weekend "is consistent with the historic intensity of use." Dickerson Aff. ¶ 23.

The Court therefore strikes the last sentence of paragraph 8, which reads: "However, while the Gaujacs presented evidence in the form of sworn statements by Ms. Gaujac and Mr. Dickinson [sic], based on firsthand knowledge, that the number of event has remained constant, Appellants failed to provide any credible evidence of an increase." In striking this sentence, the Court also strikes Footnote 4, which discusses a representation made by the Gaujacs' attorney about the number of events held at the Old Lantern.

### IV.     Paragraph 16

The Appellants called the Court's attention to our mistakes in paragraph 16, which we hereby correct. The statements quoted are from a sworn statement by Alison Wolverton, not Maura O'Dea Wygman. Additionally, Ms. Wolverton attended the meeting described with the Zoning Administrator and the Town of Charlotte's attorney, in addition to Ms. Wygman and Ms. Frost. The Court apologizes for these errors.

### Discussion

Appellants request the Court vacate or substantially amend the Discussion on pages 12 and 13 in which the Court concluded that the 2008 renovations to the doors and stairs on the west side of the barn may not be litigated here because the claim was not raised in the Notice of Appeal filed with the Town of Charlotte Zoning Board of Adjustment ("ZBA"), and because the evidence before the Court is that the Zoning Administrator investigated a complaint about those alterations at the time and no zoning violation was served on the Gaujacs. The Appellants take issue with the second prong of our analysis, because the Wolvertons did not move in next to the Old Lantern until 2014 and they have raised their claim within the statute of limitations period.

The Court stands by its analysis, principally because of the legal analysis first summarized on our July 3, 2017 decision. While we have not received a representation of facts that contradicts Ms. Wolverton's representation, we remain convinced that this Court does not have jurisdiction to hear the Wolvertons' complaint concerning the 2008 renovations because they did not raise that legal challenge in the Notice of Appeal that they presented to the ZBA. Because that legal challenge was not presented to the ZBA, we are without authority to adjudicate it in this appeal. See Old Lantern Non-Conforming Use, No. 154-12-15 Vtec, slip op. at 11–12 (Vt. Super. Ct. Envtl. Div. July 3, 2017) (Durkin, J.).

Unfortunately, we did not end our analysis of this legal issue there. We should have, since our subsequent discussion on pages 12–13 likely caused confusion for the parties about their ability to present evidence at trial about the replacement doors and stairways, at least as a basis to support Appellants' request that Old Lantern be required to obtain a zoning permit for its current operations. To reiterate, we do not have the authority to adjudicate that claim, since it was not presented to the ZBA in Appellants' Notice of Appeal. However, our ruling here will not foreclose the parties from presenting evidence about the conduct of weddings and other events, with amplification, on the west lawn.

For these reasons, we strike the paragraph that begins on the bottom of page 12 and is completed on the top of page 13. In all other respects, our analysis remains unchanged. For these same reasons, we conclude that the Wolvertons' request to vacate or substantially amend this part of our Discussion is denied.

### Question 4

The Wolvertons have asked this Court to vacate its dismissal of Question 4 from their Statement of Questions. Question 4 asks:

> If the Old Lantern was a nonconforming use, did the Old Lantern's nonconforming use change to another nonconforming use and is the Old Lantern now in violation because no conditional use approval was granted and no finding was made that the proposed nonconforming use was of the same or a more restricted nature as the existing nonconforming use?

This Question is grounded in the Town of Charlotte's Land Use Regulations, which prohibit a nonconforming use from being changed to another nonconforming use without conditional use approval. Regulations § 3.8(A)(2).

Based on the Court's re-examination of the competing sworn affidavits from Mr. Dickerson and Ms. Frost, the Court's analysis of Question 4 in its July 3, 2017 decision is off the mark; a dispute of material facts exists, precluding dismissal. See Old Lantern, No. 154-12-15 at 16–17 (July 3, 2017). In our decision, the Court determined that there had not been any representation that the Old Lantern's pre-existing, nonconforming use as a wedding and event facility had ceased and been replaced by another nonconforming use. Id. at 17. We now find that to be in error. Indeed, if the west lawn "became the location for wedding ceremonies including the use of amplified music, and related smoking, partying, and hanging out" after February 2004, as Ms. Frost asserts in her affidavit, Frost Aff. ¶ 9, this change of use could be deemed as a change from one nonconforming use to another.[4] This assertion, and Ms. Frost's knowledge of events starting in 2002, is sufficient to raise a question of whether there has been a change of use. The Court therefore vacates its dismissal of Question 4 and looks forward to hearing the parties' evidence at trial.

---

[4] The Wolvertons raised this claim with the ZBA in paragraph 5(B)–(C) of its Notice of Appeal of Zoning Administrator's September 11, 2015 Letter.

## **Question 6**

The Wolvertons request that this Court vacate its dismissal of Question 6, which asks whether the Town's performance standards, as set out in the Regulations § 3.12, apply to the Old Lantern Inn because performance standards apply to nonconforming uses.  The Court determined that the Question presents a purely legal issue and found that performance standards do not apply to nonconforming uses.  See Old Lantern, No. 154-12-15 at 18–19 (July 3, 2017).

The Wolvertons argue that the Court went beyond the Gaujacs' request to dismiss the Question because the Gaujacs' sole argument was that the Question was beyond the scope of the Court's jurisdiction.  Since the Court found the Question is within its jurisdiction, the Wolvertons would now like the opportunity to submit argument or facts in support of Question 6.  In the interest of fairness, the Court will comply with the Appellants' request and provide them with an opportunity to file a legal brief explaining why the Court should not dismiss Question 6 based on the rationale announced in our July 3, 2017 decision.  The Appellants' brief on this topic will be due thirty days from today, which we compute to be no later than **Friday, October 13, 2017.**.  The Gaujacs will then have until **Monday, October 30, 2017,** to file a reply memorandum, supporting the dismissal of Question 6.

In all other respects, the determinations stated in our July 3, 2017 decision remain as stated.

**So ordered.**

Electronically signed on September 13, 2017 at Burlington, Vermont, pursuant to V.R.E.F. 7(d).

_____
Thomas S. Durkin, Superior Judge

Notifications:

James A. Dumont (ERN 1948), Attorney for Appellants Alison and Adrian Wolverton

Liam L. Murphy (ERN 3953) and Alexander J. LaRosa (ERN 5814), Attorneys for Appellees Old Lantern Inn, Lisa and Roland Gaujac

David W. Rugh (ERN 1507), Attorney for Interested Person Town of Charlotte

Interested Persons Karen and Michael Frost

Interested Persons Justin and Maura Wygmans